*In re* COMPLAINT OF ROVAS AGAINST AMERITECH MICHIGAN

Docket No. 264862. Submitted June 5, 2007, at Lansing. Decided June
12, 2007, at 9:05 a.m. Leave to appeal granted, 480 Mich ___.

William and Sandra Rovas filed a complaint in the Public Service
Commission (PSC) against Ameritech Michigan, subsequently
known as SBC Michigan, related to a service fee that the company
charged customers after determining that a problem with a
customer's telephone service was due to the wiring inside the
customer's premises. The PSC determined that the company had
made false statements to customers and entered an order that
appeared to direct the company not to impose a service charge for
diagnosing or responding to a problem caused by a customer's
inside wiring without physically entering the customer's premises.
The Court of Appeals, MURRAY, P.J., and DONOFRIO, J. (NEFF, J.,
concurring in the result only), affirmed with regard to the issue of
false statements, but remanded the matter to the PSC for clarifi-
cation of the apparent ambiguity in its order. *Ameritech Michigan
v Michigan Pub Service Comm,* unpublished opinion per curiam of
the Court of Appeals, issued June 17, 2004 (Docket No. 244742).
On remand, the PSC revised its earlier order to provide that the
company need not enter a customer's premises every time a
service call is required, but may not charge customers for the cost
of services it provides to inspect, diagnose, and repair certain
malfunctions, including routine physical checks of its own facili-
ties, when reasonably necessary to diagnose problems attributable
to its own network or exclude its facilities as a possible cause of
disruptions to customer service. The company appealed, contend-
ing that the PSC's order precluded the imposition of service
charges related to nonregulated inside-wiring problems.

The Court of Appeals *held*:

1. While the PSC may regulate the company's activities with
regard to the company's own network, the Federal Communica-
tions Commission (FCC) has classified inside-wiring services as
nonregulated activities that are not within the scope of the PSC's
common-carrier regulatory authority.

2. The portion of the PSC's order restricting the company from
imposing charges on customers for services to diagnose problems

attributable to the company's own facilities does not violate the FCC's preclusion of state common-carrier regulation of inside-wiring services.

3. The portion of the order directing the company not to impose charges for the cost of certain services attributable to excluding its facilities as the cause of service disruption, however, violates controlling FCC determinations regarding inside wiring. A correct determination by the company excluding its facilities as the cause of service disruption inherently constitutes a correct determination that the disruption was caused by the customer's inside wiring, and the costs and services attendant to responding to a problem caused by inside wiring must be treated as a matter that is not subject to state common-carrier regulation

4. Competent, material, and substantial evidence existed to support the PSC's prior determination that the company needed to review and correct systemic problems with the company's practices related to diagnosing whether service disruptions were due to inside wiring. Although the PSC did not address the issue on remand, the testimonies of company witnesses supported the PSC's determination of systemic problems with regard to wrongfully billing customers for disruptions attributed to inside wiring when the sources of the disruptions were actually located within the company's portion of the network.

Affirmed in part and remanded for entry of a modified order.

1. TELECOMMUNICATIONS — PUBLIC SERVICE COMMISSION REGULATION.

Services by telephone companies that are related to wiring inside a customer's premises, including the costs incurred and the activities performed by a telephone company in making the determination that a problem with telephone service is caused by inside wiring, are nonregulated activities and are not within the scope of the Public Service Commission's common-carrier regulatory authority; Federal Communication Commission directives and determinations, however, do not preclude the Public Service Commission's regulation of a telephone company's activities with regard to the company's own network or facilities, and the Public Service Commission may restrict a telephone company from imposing charges on customers for services to diagnose problems attributable to the company's own facilities.

2. TELECOMMUNICATIONS — PUBLIC SERVICE COMMISSION REGULATION — SERVICE CHARGES.

A correct determination by a telephone company excluding its facilities as the cause of the disruption of a customer's service

inherently constitutes a correct determination that the disruption was caused by the wiring inside the customer's premises, and the costs and services attendant to responding to a problem caused by inside wiring are not subject to common-carrier regulation by the Public Service Commission.

*Craig A. Anderson, Lisa M. Bruno,* and *Dickinson Wright PLLC* (by *John M. Dempsey, Jeffery V. Stuckey,* and *Allen L. Lanstra, Jr.*) for SBC Michigan.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *David A. Voges* and *Michael A. Nickerson,* Assistant Attorneys General, for the Public Service Commission.

Before: TALBOT, P.J., and CAVANAGH and METER, JJ.

TALBOT, P.J. SBC Michigan (SBC) appeals as of right the order issued by the Michigan Public Service Commission (PSC) following remand by this Court. *Ameritech Michigan v Michigan Pub Service Comm,* unpublished opinion per curiam of the Court of Appeals, issued June 17, 2004 (Docket No. 244742). The order appealed attempted to clarify requirements imposed by the PSC mandating SBC to cease improper practices involving its duty to maintain "outside wiring" as part of its telecommunications network. SBC contends that the PSC's order inappropriately precludes it from charging customers for nonregulated services pertaining to problems with the customers' own "inside wiring." We affirm in part and remand for entry of a modified order.

## I. BACKGROUND

This case originated because of a $71 service charge that SBC assessed to customers after having determined that a problem with phone service was due to a

customer's inside wiring. Initially, this Court affirmed the PSC's determination that SBC violated MCL 484.2502(1)(a) by making false statements to its customers with regard to the source of their telecommunications problems. In addition, the original PSC order included language that appeared to direct SBC not to impose a service charge for diagnosing or responding to a problem attributed to inside wiring without physical entrance into the customer's premises. Because of the ambiguity within the order, this Court remanded to the PSC for clarification. In response, the PSC revised its earlier order, stating in relevant part:

> Upon careful reconsideration of the record, the Commission perceives some ambiguity as well, and clarifies its previous order to provide that SBC need not enter a customer's premises *every* time that SBC is called upon to make a service trip. However, SBC has an obligation, as set forth in its tariff, to maintain and repair its own network facilities, up to the point of the customer interface (the Network Interface Device), at no additional charge to a customer. Company witnesses confirmed this responsibility in their testimony. . . . Thus, SBC may not charge its customers for the cost of services it provides to inspect, diagnose, and repair malfunctions covered by its tariff obligation, including routine physical checks of its own facilities, in response to complaints or inquiries, when reasonably necessary to diagnose and pinpoint problems attributable to its own network or exclude its facilities as a possible cause of disruptions to customer service. The Commission further finds that, since the ordering section of the order simply directs SBC to cease and desist from further violations of the [Michigan Telecommunications Act], the order itself does not require amendment.

## II. STANDARD OF REVIEW

On appeal, SBC contends that the PSC unlawfully precluded the imposition of customer-service charges

related to nonregulated inside-wiring problems. The scope of appellate review of PSC orders is narrow. *In re MCI Telecom Complaint*, 255 Mich App 361, 365; 661 NW2d 611 (2003). A party challenging an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. *Id.* For an order of the PSC to be deemed unlawful, a party must show that the PSC failed to follow a mandatory statutory provision or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999).

In addition, a reviewing court must give due deference to the PSC's administrative expertise and should not substitute its judgment for that of the PSC. *In re Michigan Cable Telecom Ass'n Complaint,* 239 Mich App 686, 690; 609 NW2d 854 (2000). Although statutory interpretation is subject to review de novo as a question of law, *id.*, courts should give great weight to any reasonable construction by the PSC of a regulatory scheme that it is empowered to administer, *Champion's Auto Ferry, Inc v Pub Service Comm*, 231 Mich App 699, 707-708; 588 NW2d 153 (1998).

### III. ANALYSIS

In a 1986 order, the Federal Communications Commission generally precluded state common-carrier tariff regulation of the provision of inside wiring services by telephone companies. Detariffing the Installation & Maintenance of Inside Wiring, 51 Fed Reg 8,498, 8,499 (March 12, 1986). Subsequently, the FCC classified inside wiring services as nonregulated activities. In re Detariffing the Installation & Maintenance of Inside Wiring, 7 FCC Rec 1,334, 1,339 (November 21, 1991). Accordingly, when a problem with telephone service is caused by nonregulated inside wiring, the costs in-

curred and the activities performed by a telephone company in making the determination that the problem is due to inside wiring should not be treated as within the scope of the PSC's common-carrier regulatory authority. Conversely, the FCC directives regarding inside wiring do not preclude PSC regulation of SBC's activities with regard to "outside wiring" or SBC's own network.

Central to this issue is the following language in the PSC order being appealed:

> The Commission should clarify the discussion section of its February 25, 2002 order to indicate that SBC need not enter a customer's premises *every* time that SBC is called upon to make a service trip, but that it may not impose charges to recover the cost of services it provides to inspect, diagnose, and repair malfunctions covered by its tariff obligation, including the cost of conducting routine physical checks of its own facilities, in response to complaints or inquiries, if those services are reasonably necessary to diagnose problems attributable to its own facilities or exclude those facilities as a possible cause of service disruptions. [Emphasis in original.]

Applying prior FCC determinations and principles, we conclude that the portion of the order restricting SBC from imposing charges on customers for services "to diagnose problems attributable to its own facilities" does not violate the FCC's preclusion of state common-carrier regulation of inside wiring services.

However, the PSC order also directs SBC not to impose charges for services that "exclude [SBC's] facilities as a possible cause of service disruptions." We conclude that a correct determination by SBC excluding its facilities as the cause of service disruption inherently constitutes a correct determination that the disruption was caused by the customer's inside wiring. In accordance with prior FCC determinations, the costs and

services attendant to responding to a problem caused by inside wiring must be treated as a nonregulated matter, which is not subject to state common-carrier regulation. Thus, the portion of the order that directs SBC not to impose charges for the cost of certain services attributable to excluding its facilities as a cause of service disruption violates controlling FCC determinations regarding inside wiring.

Notably, the PSC refers to MCL 484.2205(2) in support of its position. At the time of the initial proceedings, that statute provided:

> If the commission finds, after notice and hearing, that the quality, general availability, or conditions for *the regulated service* violate this act or an order of the commission under this act, or is adverse to the public interest, the commission may require changes in how the telecommunication services are provided. The commission's authority includes, but is not limited to, the revocation of a license and issuing cease and desist orders. [MCL 484.2205(2) (emphasis added).]

By its plain language, this statutory provision only granted authority to the PSC with regard to regulated services. Under controlling FCC authority, when a problem is caused by a customer's nonregulated inside wiring, SBC's detection of the problem constitutes a nonregulated service. The grant of authority over regulated services provided by MCL 484.2205(2) does not extend to costs incurred to exclude SBC's facilities as a cause of service disruption because it would comprise an improper attempt to regulate the nonregulated service of diagnosing problems with inside wiring. Further, even if MCL 484.2205(2) could be read to grant authority over problems resulting from deregulated inside wiring, such a grant of authority would have to yield under Full Faith and Credit Clause and Supremacy Clause principles to determinations by the FCC. *Michi-*

*gan Gas Utilities v Pub Service Comm*, 200 Mich App 576, 583; 505 NW2d 27 (1993).

SBC cites *In re Complaint of Pelland Against Ameritech Michigan*, 254 Mich App 675; 658 NW2d 849 (2003), in support of its position that the PSC cannot exercise authority over deregulated services. In *Pelland,* this Court held that the PSC lacked jurisdiction over matters related to a telecommunications provider's "verifying identity, referrals to collection agencies, record retention, credit reports, and response to complaints about fraud" because they were "not conditions affecting how telecommunications services are provided" and did not have "a direct effect on how service is provided." *Id.* at 690. In contrast, the PSC order being appealed directly relates to SBC's response to service disruption problems. Accordingly, we find that *Pelland* is inapposite and, therefore, inapplicable to this case.

SBC also argues that the PSC order being appealed improperly requires it to physically enter a customer's premises before imposing a service-visit charge related to inside wiring. This is simply incorrect. The order does not impose any direct requirements on SBC to physically enter a customer's premises before imposing costs related to diagnosing a problem with inside wiring.

While recognizing the broad deference given to decisions of the PSC, we conclude that SBC has established that the PSC order is in part unlawful as violative of controlling FCC determinations. *In re MCI Telecom Complaint,* 255 Mich App at 365. Consequently, we remand this matter to the PSC for entry of a modified order that removes any regulation of costs or services due to a correct determination by SBC that a problem with telephone service is due to a customer's nonregulated inside wiring.

SBC further contends that competent, material, and substantial evidence did not exist to support the PSC's determination that there was a systemic problem with SBC's practices regarding service-visit charges. In the opinion and order entered before this Court's remand, the PSC concluded that SBC's "failure to render reasonable assistance in identifying the problem's cause," presumably referring to SBC's failure to ascertain more quickly and without erroneously imposing a charge on a customer, arose "from systemic problems requiring prompt review and revision by the company."

Unfortunately, on remand, the PSC did not address whether there was substantial evidence to support its finding of a systemic problem. While we are troubled by the PSC's failure to address this point, we nevertheless conclude that there was substantial evidence to support the PSC's finding of a systemic problem with regard to wrongly billing customers for service disruptions as being attributable to inside wiring when the sources of the disruptions were actually located within SBC's portion of the network.

Tom Dunning, a "dispatch control manager" for SBC, testified that he was familiar with the processes used by SBC's service technicians to respond to customer trouble reports and described the procedures as follows:

> *Q.* Given your experience with repair procedures used by [SBC], if the technician finds trouble—well, let me ask you this: Where a customer has all of his phone appliances unplugged, and the [SBC] network is providing good dial tone up to the interface network, the network interface device, is that, would that be a reason to—was there a basis to find trouble inside with the customer's wiring under those conditions?
>
> *A.* If the technician went and tested at the network interface, found the [SBC] network was providing dial tone

to the network interface, he would assume that the trouble, because he did have good dial tone, could have been in the customer's home.

*Q.* Is it a case that he is making that assumption just because there was dial tone on [SBC's] network, or would he also take steps to affirmatively identify the problem as with the customer's wiring?

*A.* He would look in with his IFD [a testing device]. He would test it both ways. If there was a shorted out, he would have obviously known that, but by looking inside, and he did not see any equipment on the inside, so he would bill the customer.

This testimony constituted substantial evidence that if an SBC service technician found a good dial tone to a customer's premises from testing at the network interface device, i.e., the demarcation point between SBC's network and the customer's inside wiring, the service technician would determine that the problem was with the customer's inside wiring without further testing.

Dunning also testified that the problem of on-again, and off-again dial tone experienced by customers was "probably the most hard, hardest trouble we do shoot on a daily basis." When asked what are the potential causes of intermittent trouble, Dunning replied: "Usually at a break in the conductor someplace. It can be caused by humidity, moisture, it can be caused by wind swinging. It's basically the conductor gets a break in the casing and when it swings, it opens and closes a little bit." This testimony provided substantial evidence to support a conclusion that the weather and other factors affecting SBC's outside network would often be responsible for intermittent trouble with telephone service.

Finally, Bruce Downey, the director of Michigan outstate installation and repair for SBC, testified, "We are

instructed to charge $71 if a technician is dispatched and the trouble proves into [sic] the customer's wiring equipment, from the network interface." SBC did not present testimony indicating any measures to avoid imposing a service-visit fee in circumstances when a technician's testing at the network interface indicates that a customer is receiving good dial tone but there is actually a relevant intermittent service problem attributable to SBC's network.

Considering the testimony of Dunning and Downey, it is reasonable to conclude that there was substantial evidence to support a determination that testing at the network interface would fail to accurately discover the source of the problem because such testing could easily be done at a time when there was a dial tone, leading an SBC technician to presume that the trouble was due to the customer's inside wiring. As a result, the customer would be then billed for the service visit. Giving deference to the PSC, we conclude that there was competent, material, and substantial evidence on the whole record to support the PSC's finding of systemic problems related to SBC wrongly determining service disruptions to be attributable to customers' inside wiring.

SBC also refers to an affidavit from Cindie Bucks that it offered following this Court's remand. However, this Court's remand order did not require the PSC to reopen the factual record. As a result, the proffered affidavit is not considered with regard to this issue because it would have been inappropriate for the PSC to have considered the affidavit on remand. See *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544; 705 NW2d 365 (2005) ("When an appellate court gives clear instructions in its remand order, it is improper for a lower court to exceed the scope of the order.").

IV. CONCLUSION

We remand this matter to the PSC for entry of a modified order that removes any PSC regulation of costs or services attributable to a correct determination by SBC that a problem with telephone service is due to a customer's nonregulated inside wiring. The portion of the order directing SBC that it may not impose charges on customers with regard to services "to diagnose problems attributable to its own facilities" need not be disturbed because it does not violate the FCC's preclusion of state common-carrier regulation of inside wiring. We affirm that substantial evidence existed to support the PSC's determination that there were systemic problems with SBC's practices related to diagnosing whether service disruptions were due to inside wiring. We do not retain jurisdiction.