*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JANEY GRIER,

      Appellant,

v

STATE TAX COMMISSION,

      Appellee.

UNPUBLISHED
May 23, 2024

No. 365849
Tuscola Circuit Court
LC No. 2022-032174-AA

Before: MALDONADO, P.J., and PATEL and N. P. HOOD, JJ.

PER CURIAM.

Janey Grier appeals by leave granted[1] the order affirming the State Tax Commission's (STC) determination that the subject property should be classified as residential real for the 2022 tax year. Judicial review of a property classification decision from the STC is limited to determining whether the STC's decision was authorized by law, Const 1963, art 6, § 28, and neither the circuit court nor this Court may review the evidentiary support for the STC's property classification decision. *CVS Caremark v State Tax Comm*, 306 Mich App 58, 61-62; 856 NW2d 79 (2014). We find that the circuit court applied the correct standard of review and reached the proper conclusion. We affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This real property classification dispute involves two contiguous parcels of real property in Koylton Township: (1) parcel number 79-016-007-000-0200-00, which is 40 acres (parcel 0200), and (2) parcel number 79-016-007-000-0400-00, which is 41.13 acres (parcel 0400) (collectively, "the subject property"). Grier purchased the parcels in August 2021 in an arm's length transaction. The subject property was classified as residential real when it was purchased.

---

[1] *Grier v State Tax Commission*, unpublished order of the Court of Appeals, entered July 24, 2023, (Docket No. 365849).

Grier contends that the primary use of the subject property for the 2022 tax year was agricultural and thus it should be reclassified as agricultural real. According to Grier, there are approximately 63 acres of mature maple trees scattered across the subject property that are "suitable for maple sap harvesting" and there are younger maple trees that will be suitable for maple sap harvesting at some time in the future. Grier maintains that there are 30 acres on the 0200 parcel that include "significant numbers of maple trees" and "will also support rotational pasturing for cattle and swine." But, at the time of her petition to the STC, she was still "in the process of setting up the infrastructure necessary to support swine and cattle on [the subject property] to properly house and care for them." In addition, the 0400 parcel contains "approximately 30 fruit producing apple trees [that were] planted by the former owners . . . ." Grier maintains that approximately seven acres across the subject property "will be dedicated fruit orchard." There is a six-acre lake on the 0400 parcel, nine acres of wetlands on the 0200 parcel, and scattered "seasonal ponding" on both parcels.

In March 2022, Grier filed petitions with Koylton Township's March board of review requesting it to reclassify each parcel of the subject property as agricultural real for the 2022 tax year.[2] The board of review denied both petitions.

Grier appealed the board of review's decision to the STC. Grier maintained that she was "actively engaged in 'agricultural operations' on [the subject] property since the purchase date on August 16, 2021, as defined by MCL 211.34c." In support of her position, Grier referenced a "Chronological List of Events/Tasks" that listed activities from the purchase date through June 16, 2022, a "Farm Management Plan, Spring 2022," and documents for purchases of various equipment from September 2021 to May 2022.[3] Grier argued that the subject property met the "agricultural" definition:

> As specified in the definition of "Agricultural operations," we are farming in all its branches, including cultivating soil in preparation for agricultural and horticultural commodities per MCL 211.34c(ii)(A) and (B). For example, we are preparing our land for the addition of livestock[,] swine, cattle, and poultry, as well as fruit orchards[,] apples, cherries, and blueberries through activities such as clearing excess vegetation from planting sites, creating and improving existing trails to gain access to maples, pruning apple trees, removing fallen/dead limbs on and around maples trees, and inventorying maples trees using geo location software, and planning gravity collection routes for lines and central collection points for sap. In addition, we are performing practices on our farm incident to, or in conjunction with, farming operations. MCL 211.34c(ii)(G). Such as, improving the driveway and trails to access the maple trees. Additionally, we are clearing the site for our permit approved agricultural building (to store livestock feed, fertilizer, machinery, etc., per MCL 211.34c(iii)(B) to [sic] maintaining livestock, and orchards) and

---

[2] Grier also challenged the subject property's annual valuation, but that is the subject of a separate appeal pending before this Court, *Grier v Township of Koylton*, Court of Appeals Docket No. 366221.

[3] All but one of the purchases was made in 2022.

spraying fruit trees as protection from disease and pests. As well as purchasing supplies and equipment to prepare for and support these farming activities. Furthermore, we are actively working on "projects" as risk mitigation measures such as, maintaining fences, MCL 211.34c(iii)(A), fencing off stagnant ponds that pose a disease risk, MCL 211.34c[(]iii[)](B) and installing new fencing around the property.

Grier asserted that the significant number of maple trees on each parcel met the definition of agricultural operations. Grier claimed that she intended to collect sap from the maple trees annually, but weather and site conditions directly impacted her sap collection in 2022. While she stated that she "manually harvested approximately 120 gallons of maple sap and processed approximately 2.5 gallons of maple syrup" in 2022, she admitted that she "did not sell syrup as we did not feel it was up to our quality standards."

Grier further maintained that, in the fall of 2022, she intended "to sell the apples from the existing trees . . . as well as plant and manage additional fruit trees commercially, which also meets the description of an agricultural operation." Grier asserted that the subject property was purchased to farm and she completed various tasks to prepare for farming the property, including registering her "farm business, Shady Maple Hills Farm, LLC with the State of Michigan[,] develop[ing] and publish[ing] a farm management plan, join[ing] the Veterans Farmer Coalition and other farm groups, [and] devot[ing] countless hours researching and implementing best practices in each of branches of farming we are pursuing." Relying on the definition of "farmland" set forth in MCL 324.36101 in the Natural Resources and Environmental Protection Act, Grier asserted, "[E]ach of our parcels are 40 or more acres, in 1 ownership, with 51% or more of the land area devoted to agricultural use (maple trees, fruit orchards, rotational pasture, etc.). We are well over the 51% of the land devoted to agriculture use as we have 63 of our approximately 81 acres devoted to maple trees alone, and therefore met the state's definition of farmland."

The farm management plan included with Grier's appeal to the STC states that "[t]he objectives for the landowner are to improve the agricultural use by enhancing the value, productivity, and profitability of the existing maple trees and apple orchards, conduct silva pasture farming activities, (including poultry, swine, cattle, as well as various fruit orchards) while also improving the quality of habitat for variety woodland wildlife species, by increasing the diversity and health of cover and food available on the property. Additionally, maintaining visual and naturalistic aspects are important to the landowner." The plan reflects that, historically, "the property was only used for recreational activities and cottage level syrup production. There have not been any forest management activities completed on the property for many decades, only very minimal maintenance comprised of cutting/trimming hazard trees." The general site descriptions states that "[t]he majority of the property is forested, containing a [sic] high-quality stands of sugar maple, mixed hardwood trees and softwoods. There is [sic] potentially 800+ taps and an anticipated 700 quarts of maple syrup per season." The plan describes Grier's goals and objectives for the subject property and states that "[f]uture plans for the property include forest stand improvements to include cutting selected trees and understory vegetation."

In response to Grier's appeal to the STC, the assessor recommended that the subject property be classified as residential real. In addition to his own comments, the assessor provided

property cards, valuation reports, and the board of review decisions for each parcel. In support of his recommendation, the assessor stated

> The subject property is wooded land. It is not farmland, nor has it been farmland for at least the previous thirty years. It is wooded land with large trees, rolling hills, season wetlands and varying soils. The property was purchased by the current owner and petitioners on August 16, 2021. The property is gated at the road and the owner has not responded to my requests to visit the property. My conclusions are based upon current aerial photos, historical aerial photos, and what is visible from the road as well as the photos and narratives proved by the owner.

> The property was classified as residential property when it was purchased and that classification has remained the same after purchase. The petitioner contends that the property needs to be classified according to MCL 211.34c. I concur. This statute makes no mention whatsoever of collecting sap from maple trees for the purpose of making maple syrup. The only place that is mentioned is in the discussion of determining what is or is not "Qualified Agricultural Property". Which is a different discussion than classification.

> These two parcels are not agricultural property. The owner may have plans to do many things in the future, but that has no bearing on the current status and use of the property for 2022. There is no farming taking place on the property currently. An argument for letting lands lie fallow requires a history of tilling the land and growing a crop. There is no cropping history on this land to lie fallow from. There is no livestock. There may or may not be fruit trees, but there is no active orchard operation to prune, fertilize, treat for pests, and harvest a crop. The act of tapping a few trees and making 2.5 gallons of syrup does not constitute an agricultural enterprise on over 81 acres. This is a recreational property and as such it belongs in the Residential class according to statute and STC guidelines.

The STC staff recommended that the subject property be classified as residential real. In reaching its recommendation, the "[s]taff reviewed the petition filed, pictures, record card and information provided by the taxpayer and assessor." The STC "considered and arbitrated" Grier's 2022 classification appeals at its August 2022 meeting and unanimously approved adoption of the staff's recommendation. Based on the petitions, the township assessor's response, and the STC staff recommendations, the STC determined that the correct classification for each of the two parcels for the 2022 tax year is "Residential Real."

Grier appealed the STC's decision to the circuit court pursuant to MCL 600.631. Grier asserted that "[t]he denial of the agricultural classification was not based on factual findings supported by competent, material, and substantial evidence on the whole record, [and] the denial of the classification did not comply with the relevant Michigan statutes." Specifically, Grier argued that the STC did not comply with MCL 211.34c and thus its decision was not based on proper procedure. She further asserted that the STC's decision "did not represent the reasonable exercise of discretion." Grier asserted that her maple syrup operations was an agricultural operation on the subject property and thus the proper classification was agricultural. Grier argued

that the classification should not be denied because her 2022 maple sap harvesting[4] was hindered by site conditions that were beyond her control. Although none of the syrup produced by Grier in the 2022 harvest season was sold and she had zero profit for the 2022 season, Grier argued that profitably was not a requirement for the subject property to be classified as agricultural.[5]

The STC argued that its classification decision was authorized by law, it did not exceed its authority, and it followed the procedures provided by law. It also maintained that its decision did not violate the statute and was not arbitrary or capricious. The STC acknowledged that Grier "arguably provided some evidence of agricultural use," but asserted "there was also evidence that would support the continuation of the residential real property classification." The STC did not dispute that maple syrup production can constitute agricultural use, but maintained that Grier's evidence of agricultural use was not reliable and Grier's evidence did not support an agricultural use classification for the 2022 tax year. Relying on MCL 211.34c(5),[6] the STC argued that "the actual agricultural use was, at best, a small fraction of the valuation of the parcel" and thus it appropriately determined that the residential real classification "most significantly influences the total valuation of the parcel."

Grier replied that the STC's reliance on MCL 211.34c(5) for its classification decision was not authorized by law because there was no prior reference to this statutory provision by the board of review, the assessor, or the STC. Grier asserted that the record was devoid of any discussion regarding the multiple classifications or valuations of each classification. She further argued that the STC's reliance on MCL 211.34c(5) negated the assessor's and the STC's prior statements that there was no active farming on the subject property. Grier maintained that the only current usage for the subject property was agricultural and thus it should be classified as agricultural real. Grier also maintained that the STC arbitrarily and capriciously dismissed her evidence of agricultural operations.

Following oral argument, the circuit court issued an opinion and order affirming the STC's classification of the subject property as residential real finding that the decision "was supported by the applicable statute, followed the procedures provided by law, and was not arbitrary or capricious." The court concluded that the STC incorrectly interpreted MCL 211.34c(2)(a) when it found "the subject property does not appear to have more than 50% of the taxable value in agricultural use as required in MCL 211.34c(2)(a)." The court stated, "MCL 211.34c(2)(a) does not require a property to have 50% of its taxable value in agricultural use to be deemed agricultural

---

[4] Grier stated that "[t]he season for maple sap harvesting is very short, a matter of weeks, and dependent on weather conditions" and "usually occurs late February to early March, depending on the weather."

[5] Grier attached multiple exhibits to her brief, but many of those exhibits were not part of the administrative record. The court declined to consider the additional factual information that was not part of the STC's original record.

[6] MCL 211.34c(5) states, "If the total usage of a parcel includes more than 1 classification, the assessor shall determine the classification that most significantly influences the total valuation of the parcel."

real.  The 50% threshold of MCL 211.34c(2)(a) deals with the determination of 'any contiguous parcel owned by the same taxpayer.' "  But the court found that "STC's ultimate determination in which it classified the property as residential real was not improper and thus authorized by law."  The court stated that MCL 211.34a(5) required the assessor to determine the classification that most significantly influenced the total valuation of the subject property because the property usage included more than one classification.  The court found that STC's determination that residential real significantly influenced the total valuation of the subject property was based on the petition, the assessor's response, and the STC's staff recommendations, and supported by the applicable statute.  The court further found that the STC followed the lawful procedures set forth in MCL 211.34c(6), stating that the "STC arbitrated [Grier's] claim based on her written petition and the written recommendations of the assessor and the STC staff."  Finally, the court held that the court's decision was not arbitrary or capricious, noting while Grier provided some evidence of agricultural use, the STC determined that the evidence was not reliable.  This appeal followed.[7]

## II.  STANDARDS OF REVIEW

"Whether a circuit court applied the appropriate standard of review is a question of law that this Court reviews de novo"  *Natural Resources Defense Council v Dep't of Environmental Quality*, 300 Mich App 79, 87; 832 NW2d 288 (2013).  This Court also reviews de novo "whether an agency's action complied with a statute."  *Id*. at 88.  In addition "[t]his Court reviews de novo issues of statutory interpretation underlying an administrative body's ruling."  *CVS Caremark*, 306 Mich App at 64.[8]

The scope of judicial review of an administrative agency's decision depends on whether a hearing was required.  See Const 1963; art 6, § 28.  The STC's review of a property classification

---

[7] Grier claimed an appeal as of right from the trial court's order affirming the STC's classification decision.  The STC filed a motion to dismiss Grier's appeal.  This Court denied the motion to dismiss, but held "[t]o the extent that the decision of the State Tax Commission is properly considered the decision of a "tribunal" under MCR 7.203(A)(1)(a), the claim of appeal is treated as an application for leave to appeal" and granted leave.  *Grier v State Tax Commission*, unpublished order of the Court of Appeals, entered July 24, 2023, (Docket No. 365849).

[8] "Unless clearly erroneous, the Courts are to give great weight to the interpretation of a statute placed upon it by the administrative body whose job it is to apply the statute."  *Schmaltz v Troy Metal Concepts, Inc*, 469 Mich 467, 471; 673 NW2d 95 (2003).  "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute."  *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018).  This Court "accord[s] to every word or phrase of a statute its plain and ordinary meaning, unless a term has a special, technical meaning or is defined in the statute."  *Guardian Environmental Servs, Inc v Bureau of Const Codes and Fire Safety*, 279 Mich App 1, 6; 755 NW2d 556 (2008).  "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written."  *Honigman Miller Schwartz & Cohn LLP v City of Detroit*, 505 Mich 284, 294; 952 NW2d 358 (2020) (cleaned up).

dispute under MCL 211.34c(6) does not require a hearing; rather, "[t]he plain statutory language contemplates that the STC must arbitrate a property classification dispute only on the basis of written submissions." *CVS Caremark v State Tac Comm*, 306 Mich App at 62. Accordingly, judicial review is limited to determining whether the STC's decision was authorized by law, Const 1963; art 6, § 28, and neither the circuit court nor this Court may review the evidentiary support for the STC's property classification decision. *Id*. at 61-62.

## III. ANALYSIS

Grier argues that she was denied due process and equal protection, the circuit court applied an improper standard of review, and the STC's decision was not authorized by law because it was based upon an incorrect interpretation and misapplication of the statute. We disagree.

In Michigan, all real property is subject to ad valorem tax under the General Property Tax Act, MCL 211.1 et seq. The taxable status of real property for a tax year is "determined as of each December 31 of the immediately preceding year, which is considered the tax day[.]" MCL 211.2(2). Pursuant to MCL 211.34c(1), local tax assessors must annually "classify every item of assessable property according to the definitions contained in this section." There are six categories of real property classifications defined in MCL 211.34c(2): (1) agricultural,[9] (2) commercial,[10] (3) developmental,[11] (4) industrial,[12] (5) residential,[13] or (6) timber-cutover.[14]

In this case, the subject property was classified by the assessor as residential real, which includes:

> (*i*) Platted or unplatted parcels, with or without buildings, and condominium apartments located within or outside a village or city, which are used for, or probably will be used for, residential purposes.

> (*ii*) Parcels that are used for, or probably will be used for, recreational purposes, such as lake lots and hunting lands, located in an area used predominantly for recreational purposes. . . . [MCL 211.34c(2)(e).]

Grier contends that the subject property should have been classified as agricultural real, which includes "parcels used partially or wholly for agricultural operations, with or without buildings." MCL 211.34c(2)(a). If a parcel "is classified as agricultural real property and is engaged in agricultural operations," then "any contiguous parcel owned by the same taxpayer . . . shall be classified as agricultural real property." *Id*. This includes contiguous parcels that are

---

[9] MCL 211.34c(2)(a).

[10] MCL 211.34c(2)(b).

[11] MCL 211.34c(2)(c).

[12] MCL 211.34c(2)(d).

[13] MCL 211.34c(2)(e).

[14] MCL 211.34c(2)(f).

vacant, wooded, "or a parcel on which is located 1 or more agricultural outbuildings that comprise more than 50% of the taxable value of all buildings on that parcel as indicated by the assessment records for the local tax collecting unit in which that parcel is located[.]" *Id.* Relevant to this action, "agricultural operations" means the following:

> (A) Farming in all its branches, including cultivating soil.
>
> (B) Growing and harvesting any agricultural, horticultural, or floricultural commodity.
>
> \* \* \*
>
> (G) Performing any practices on a farm incident to, or in conjunction with, farming operations. A commercial storage, processing, distribution, marketing, or shipping operation is not part of agricultural operations. [MCL 211.34c(2)(a)(ii).]

"If the total usage of a parcel includes more than 1 classification, the assessor shall determine the classification that most significantly influences the total valuation of the parcel." MCL 211.34c(5).

A property owner has a right to dispute an assessor's classification of real property. The owner must notify the assessor of the dispute

> and may protest the assigned classification to the March board of review. An owner or assessor may appeal the decision of the March board of review by filing a petition with the state tax commission not later than June 30 in that tax year. The state tax commission shall arbitrate the petition based on the written petition and the written recommendations of the assessor and the state tax commission staff. An appeal may not be taken from the decision of the state tax commission regarding classification complaint petitions and the state tax commission's determination is final and binding for the year of the petition. [MCL 211.34c(6).][15]

Judicial review of the STC's decision is limited to determining whether the decision was authorized by law, Const 1963; art 6, § 28, and neither the circuit court nor this Court may review the evidentiary support for the STC's property classification decision. *CVS Caremark v State Tac Comm*, 306 Mich App at 61-62. In determining whether a decision was authorized by law, a reviewing court must consider whether the decision is (1) "in violation of statute," (2) "in excess of the statutory authority or jurisdiction of the agency," (3) "made upon unlawful procedures resulting in material prejudice," or (4) "arbitrary and capricious." *Brandon Sch Dist v Mich Ed Special Servs Ass'n*, 191 Mich App 257, 263; 477 NW2d 138 (1991). Adhering to this standard, the circuit court concluded that the STC incorrectly interpreted the statute when it determined that "the subject property does not appear to have more than 50% of the taxable value in agricultural

---

[15] The Michigan Supreme Court held that the sentence prohibiting an appeal is unconstitutional and severable. *Midland Cogeneration Venture Ltd Partnership v Naftaly*, 489 Mich 83, 91-93; 803 NW2d 674 (2011).

use as required in MCL 211.34c(2)(a)[,]" but found that the STC's determination that the subject property should be classified as residential real was authorized by law.

The record reflects that the STC followed the lawful procedures set forth in MCL 211.34c(6) and acted within its statutory authority and jurisdiction. The STC "considered and arbitrated the appeals based on the petition, the response provided and the staff recommendation." The STC adopted its staff's recommendations that the subject property be classified as residential real. However, we agree with the circuit court that the STC incorrectly interpreted MCL 211.34c(2)(a) when it found "the subject property does not appear to have more than 50% of the taxable value in agricultural use as required in MCL 211.34c(2)(a)." As the circuit court stated, "MCL 211.34c(2)(a) does not require a property to have 50% of its taxable value in agricultural use to be deemed agricultural real. The 50% threshold of MCL 211.34c(2)(a) deals with the determination of 'any contiguous parcel owned by the same taxpayer.' " The STC does not contest this issue on appeal.

The STC's decision was also based on the following considerations: (1) the evidence did not reflect that Grier was "actively farming currently" and (2) "a majority of the land is wooded." The mere fact that the property was wooded does not establish that the subject property was not used for agricultural operations. The STC does not dispute that maple syrup production can be an agricultural use and acknowledges that Grier "arguably provided some evidence of agricultural use[.]" But the majority of the evidence that Grier provided was related to activity after the December 31, 2021 tax day.

Grier argues that the STC misinterpreted MCL 211.2(2) and misapplied tax day because it only reviewed Grier's evidence from August 2021 through December 31, 2021 and excluded evidence from 2022 in making its property classification determination. The taxable status of real property for a tax year is "determined as of each December 31 of the immediately preceding year, which is considered the tax day[.]" MCL 211.2(2). The statutory language is unambiguous and thus must be applied as written. *Honigman Miller Schwartz & Cohn*, 505 Mich at 294. Pursuant to the unambiguous language of MCL 211.2(2), the relevant tax day for the 2022 tax year classification is "December 31 of the immediately preceding year," which is 2021. Grier purchased the property in August of 2021, just a few months before the December 31, 2021 tax day. The evidence that Grier presented to the STC was primarily for purchases and activities that occurred *after* December 31, 2021. Based on Grier's own admissions, no maple sap harvesting occurred in 2021 when she owned the property. And Grier's evidence reflects that the majority of the preparations for the 2022 harvest, which "usually occurs late February to early March," occurred in 2022 after the relevant tax day.

We find no merit in Grier's argument that the relevant tax day is May 1 pursuant to MCL 211.7ee(6).[16] The matter before the STC concerned the classification of the subject property under

---

[16] Pursuant to MCL 211.7ee(6), "[a]n owner of property that is qualified agricultural property on May 1 for which an exemption was not on the tax roll may file an appeal with the July or December board of review in the year the exemption was claimed or the immediately succeeding year."

-9-

MCL 211.34c, not whether Grier was entitled to a qualified agricultural property exemption under MCL 211.7ee.

Grier's reliance on *13400 Mount Elliott, LLC v State Tax Comm*, 341 Mich App 436; 990 NW2d 400 (2022) is also misplaced. The dispute in *13400 Mount Elliott* was whether the Plant Rehabilitation and Industrial Development Districts Act, MCL 207.551 *et seq*., required the STC to use the subject property's previous year's taxable value on the industrial facilities tax exemption certificate (IFEC). *13400 Mount Elliott*, 341 Mich App at 438. MCL 207.564(1), sets forth the manner for calculating an industrial facility tax:

> The amount of the industrial facility tax, in each year for a replacement facility, shall be determined by multiplying the total mills levied as ad valorem taxes for that year by all taxing units within which the facility is situated by the taxable value of the real and personal property of the obsolete industrial property for the tax year immediately preceding the effective date of the industrial facilities exemption certificate after deducting the taxable value of the land and of the inventory . . .

The IFEC in *13400 Mount Elliott* became effective on December 31, 2019. *13400 Mount Elliott*, 341 Mich App at 439. The parties disputed the calculation of the taxable value of the subject property under MCL 207.564(1). *Id*. at 441. The petitioner argued "that the tax year immediately preceding the December 31, 2019 effective date of the IFEC was 2018 and thus the 2018 taxable value should be used to calculate the industrial facility tax. But the STC concluded, and the trial court agreed, that the 2019 taxable value should be used." *Id*. The STC and the trial court relied on the "tax day" as provided in MCL 211.2(2), arguing that it was synonymous with "tax year." *Id*. at 442. This Court reversed, concluding that "[t]he trial court and the STC erroneously read language into MCL 207.564(1) that is not included in the statute[,] and the clear and unambiguous language of MCL 207.564(1) must be enforced as written. *Id*. at 445-446. This Court's interpretation of MCL 207.564(1) is not relevant here.

Given our limited scope of review, we find that the STC's determination that the subject property be classified as residential real for the 2022 tax year was authorized by law. Grier's evidence of agricultural use focused on activities in 2022 (which is the 2023 tax year), not 2021 (which is the 2022 tax year). Grier failed to satisfy her burden to demonstrate that the property should be classified as agricultural for the 2022 tax year pursuant to MCL 211.34c(2)(a). The STC's decision that there was not adequate evidence to support an agricultural classification of the subject property for the 2022 tax year followed the lawful procedure set forth in MCL 211.34c(6), was not in violation of a statute, and was within the STC's authority and jurisdiction. We cannot say that the decision "lacks an adequate determining principle" or that it "reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance," or that it is "freakish or whimsical," *Wescott*, 298 Mich App at 162, and thus the STC's decision was not arbitrary or capricious. Accordingly, the circuit court did not err when it found that "STC's ultimate determination in which it classified the property as residential real was not improper and thus authorized by law."

However, we find that the circuit court erred when it found that "the STC determined that residential real most significantly influences the total valuation of the parcel[s]" pursuant to MCL 211.34a(5). The record does not support that the STC made this specific finding. As Grier

-10-

correctly argues, the STC's classification determination summary does not mention MCL 211.34a(5). Nor did the board of review or assessor cite that statutory provision. The STC did not reference MCL 211.34a(5) until it filed its brief on appeal in the circuit court. Given the limited scope of judicial review of the STC's classification decision, we find that the circuit court exceeded its scope of review and erroneously made a finding that is not supported by the administrative record. Nevertheless, the court's erroneous finding on this issue is not dispositive. The STC's ultimate determination that that the correct classification for the subject property for the 2022 tax year is residential real was authorized by law.

Finally, because Grier did not raise the constitutional due process or equal protection issues before the STC or the circuit court, those issues are not preserved and we are not obligated to consider them. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2-3 ("In civil cases, Michigan follows the 'raise or waive' rule of appellate review.") (cleaned up). We will generally decline to address unpreserved issues unless the failure to do so would result in manifest injustice, the issue involves a question of law and the facts necessary for its resolution have been presented, or resolving the issue is necessary to properly determine the case. *Id*. at ___; slip op at 3. Our Supreme Court has cautioned that this discretion should be exercised sparingly and only in exceptional circumstances. *Napier v Jacobs*, 429 Mich 222, 233-234, 414 NW2d 862 (1987). We decline to exercise our discretion here.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Sima G. Patel
/s/ Noah P. Hood