*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CYNTHIA ANDERSON,

        Plaintiff-Appellee,

v

ASCENSION PROVIDENCE HOSPITAL, doing
business as ASCENSION PROVIDENCE
HOSPITAL SOUTHFIELD CAMPUS,

        Defendant-Appellant.

UNPUBLISHED
December 18, 2024
9:10 AM

No. 365559
Oakland Circuit Court
LC No. 2022-197395-NH

Before: O'BRIEN, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

In this negligence and medical malpractice action, defendant appeals by leave granted[1] the trial court order denying defendant's motion for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). Defendant argues that it is entitled to immunity under Michigan's Pandemic Health Care Immunity Act (PHCIA), MCL 691.1471 *et seq.* and the federal Public Readiness and Emergency Preparedness Act (PREP Act), 42 USC 247d-6d. Accepting the facts stated in plaintiff's complaint as true, we conclude that defendant is not entitled to immunity under the PREP Act, but MCL 691.1475 is applicable to plaintiff's claims because her injuries were allegedly sustained while defendant was providing "healthcare services that assisted, helped, or promoted the state's reactions and actions taken as a result of the COVID-19 pandemic." See *Warren v Flint*, __ Mich App __, __; __ NW3d __ (2024) (Docket No. 366226); slip op at 8. However, on remand, we direct the trial court to consider plaintiff's request for leave to amend her complaint to plead an exception to immunity. For the reasons stated in this opinion, we reverse and remand for further proceedings.

---

[1] *Anderson v Ascension Providence Hosp*, unpublished order of the Court of Appeals, issued September 21, 2023 (Docket No. 365559).

# I. BACKGROUND

On May 18, 2020, plaintiff presented to defendant's emergency room "due to concern for a possible suicide attempt." According to the allegations in plaintiff's complaint, on admission to the emergency department, she "stated she occasionally felt depressed due to chronic pain and the stress of being quarantined because of the Covid-19 pandemic." She also "stated that she was afraid to leave her house amidst the ongoing pandemic." A Hendrich II Fall Risk evaluation was performed, which reflected that plaintiff was a high risk for falls. Plaintiff was also screened and tested for COVID-19; plaintiff tested negative and had no COVID-19 symptoms.

Three days later, plaintiff was admitted to the behavioral unit for observation. While plaintiff was in the unit, she took a shower unattended. Plaintiff was found sitting on the shower floor complaining of intense pain in the left knee. Diagnostic testing revealed a displaced lateral tibial plateau fracture and a nondisplaced fracture of the fibular head in the left knee. Plaintiff underwent surgical repair of the fractures and a lengthy rehabilitation.

Plaintiff filed a two-count complaint against defendant asserting claims for medical malpractice and ordinary negligence. Plaintiff alleged that defendant, through its staff, breached the standard of care, including its duty to provide adequate protection and supervision to plaintiff, who presented a high risk of falling, thereby directly and proximately causing her to suffer a preventable fall that resulted in serious injuries and damages. Plaintiff attached an affidavit of merit from a registered nurse to her complaint. The affidavit listed defendant's and its nursing staff's deviations from the applicable standard of care, which the affiant opined resulted in plaintiff's injuries and damages.

Shortly after filing its answer and affirmative defenses, defendant moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). Defendant argued that plaintiff's claims were barred on the basis of immunity under MCL 691.1475 because defendant is a healthcare facility that provided services in support of Michigan's COVID-19 pandemic response and plaintiff suffered injuries as a result of defendant's services during the applicable timeframe. Defendant additionally argued that it was immune from liability under the federal PREP Act because plaintiff's claims arose out of a "covered countermeasure." Specifically, defendant contended that, because defendant was a "covered person" within the meaning of the act, and because defendant's nursing staff was using protective measures to prevent the spread of COVID-19 (a covered countermeasure), defendant was immune under the act.

Plaintiff asserted that defendant was not entitled to immunity under MCL 691.1475 because plaintiff's injuries, care, and treatment did not arise while defendant treated her for COVID-19. Plaintiff likewise asserted that the PREP Act did not apply because plaintiff's injuries were not caused by a "covered countermeasure," i.e., COVID-19 treatments or services. Alternatively, plaintiff argued that she should be given the opportunity to amend her complaint to include allegations and facts supporting a claim for gross negligence, which is an exception to the immunity provided by MCL 691.1475.

The trial court dispensed with oral argument under MCR 2.119(E)(3), and entered an opinion and order denying defendant's motion for summary disposition. The court construed MCL 691.1475 as limiting immunity to healthcare services rendered to patients related to COVID-19

-2-

within the relevant timeframe.  Because plaintiff presented to defendant's emergency room without COVID-19 symptoms, tested negative for COVID-19, and fell while unassisted in the shower, the court concluded that plaintiff's treatment had nothing to do with COVID-19.  For these reasons, the court declined to extend the immunity afforded by MCL 691.1475 to plaintiff's claims.[2]  This appeal followed.

## II.  STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition."  *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).  Summary disposition under MCR 2.116(C)(7) is proper when a claim is barred because of immunity granted under the law.  *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010).  "When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them."  *Id*.

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint."  *El-Khalil*, 504 Mich at 159 (emphasis omitted).  A court must accept all factual allegations as true and review the matter on the pleadings alone.  *Id*. at 160. The grant of a motion under MCR 2.116(C)(8) is only appropriate "when a claim is so clearly unenforceable that no factual development could possibly justify recovery."  *Id*.

Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."  MCR 2.116(C)(10).  When reviewing a motion for summary disposition under MCR 2.116(C)(10), we must consider the evidence submitted by the parties in the light most favorable to the nonmoving party.  *El-Khalil*, 504 Mich at 160.  "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ."  *Id*. (cleaned up).

We also review de novo issues of statutory interpretation.  *Drob v SEK 15, Inc*, 334 Mich App 607, 617; 965 NW2d 683 (2020).  "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute."  *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018).  "We accord to every word or phrase of a statute its plain and ordinary meaning, unless a term has a special, technical meaning or is defined in the statute."  *Guardian Environmental Servs, Inc v Bureau of Const Codes and Fire Safety*, 279 Mich App 1, 6; 755 NW2d 556 (2008).  "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written."  *Honigman Miller Schwartz & Cohn LLP v City of Detroit,* 505 Mich 284, 294; 952 NW2d 358 (2020) (cleaned up).  If a statutory term is undefined, it "must be accorded its plain and ordinary meaning[;]" but a legal term of art "must be construed in accordance with its peculiar and appropriate legal

---

[2] The trial court did not address the application of the PREP Act to plaintiff's claims or plaintiff's request for leave to amend her complaint to plead an exception to immunity.

meaning." *Brackett v Focus Hope, Inc*, 482 Mich 269, 276; 753 NW2d 207 (2008), citing MCL 8.3a.

III. IMMUNITY UNDER MCL 691.1475

Defendant first contends that it is immune from liability under MCL 691.1475. We agree that MCL 691.1475 is applicable to the care that defendant provided to plaintiff. However, on remand, we direct the trial court to consider plaintiff's request for leave to amend her complaint to plead an exception to immunity.

MCL 691.1475 provides:

> A health care provider or health care facility that provides health care services in support of this state's response to the COVID-19 pandemic is not liable for an injury, including death, sustained by an individual *by reason of those services*, regardless of how, under what circumstances, or by what cause those injuries are sustained, unless it is established that the provision of the services constituted willful misconduct, gross negligence, intentional and willful criminal misconduct, or intentional infliction of harm by the health care provider or health care facility. [Emphasis added.]

The immunity from liability provided by MCL 691.1475 "applies retroactively, and applies on or after March 29, 2020 and before July 14, 2020." MCL 691.1477.

In this case, there is no dispute that the acts or omissions that form the basis of plaintiff's negligence and medical malpractice claims occurred during the statutory timeframe. There is also no dispute that defendant is a healthcare facility that provided healthcare services in support of Michigan's response to the COVID-19 pandemic. Instead, the controversy centers on whether plaintiff's injury was "by reason of" healthcare services in support of the state's response to the Covid-19 pandemic, regardless of how or by what cause the injury was sustained. Defendant argues that immunity is not limited to those injuries caused by COVID-19 treatment, whereas plaintiff contends that immunity is limited to when a person suffers an injury actually caused by COVID-19 services provided to that person.

A panel of this Court recently concluded that the immunity conferred by MCL 691.1477 is not limited to when a patient is being treated for COVID-19. *Warren*, ___ Mich App at ___; slip op at 8. The *Warren* Court construed the phrase "health care services in support of this state's COVID-19 pandemic" to encompass "healthcare services that assisted, helped, or promoted the state's reactions and actions taken as a result of the COVID-19 pandemic[,]" including services given "to those infected with COVID-19 and *regular healthcare services provided during the statutory period*." *Id*. at ___; slip op at 8 (emphasis added). In other words, "the immunity provision in MCL 691.1475 . . . cover[s] both regular medical care and medical treatment specific to COVID-19." *Id*. at ___; slip op at 8.

The plaintiff in *Warren* sought treatment from the defendant hospital for shortness of breath. *Id*. at ___; slip op at 1. He was admitted to the COVID-19 floor, was intubated, and later tested positive for COVID-19. *Id*. at ___; slip op at 1-2. During his stay, the plaintiff developed pressure ulcers allegedly resulting from the defendant's failure to assess his risk of such sores,

reposition him to prevent their development, and provide appropriate treatment. *Id*. at ___; slip op at 2. Although the cause of plaintiff's injury was allegedly the failure to guard against pressure ulcers, not the treatment for COVID-19 per se, this Court concluded that the defendant was entitled to the immunity afforded under MCL 691.1475, explaining:

> Plaintiff alleged that he developed multiple pressure ulcers in defendant's care. Those injuries were a consequence of the care defendant provided in response to COVID-19. Stated otherwise, those injuries were sustained by reason of the healthcare services provided by defendant in support of the state's response to the COVID-19 pandemic. Plaintiff presented at the hospital with signs of COVID-19, was admitted to the COVID-19 floor for COVID-19 treatment, and allegedly developed pressure ulcers as a result of that care. Such a sequence of events is covered by the plain language of the statute. [*Id*. at ___; slip op at 9-10.]

Subsequently, in *Skipper-Baines v Bd of Hosp Managers for the City of Flint*, ___ Mich App ___ ; ___ NW2d ___ (2024) (Docket No. 365137); slip op at 4, another panel of this Court clarified that immunity is not limited to "when a patient is being treated for COVID-19, but it is clear that there must be *some connection*." (Emphasis added). The decedent in *Skipper-Baines* underwent a minor surgical procedure to treat gallbladder disease, and, once returned to his room, he was attacked by his mentally unstable roommate. *Id*. at ___; slip op at 1-2. The decedent's condition declined over the next several days, and he ultimately passed away. *Id*. at ___; slip op at 2. At some point during his hospitalization, the decedent contracted COVID-19. *Id*. at ___; slip op at 2. The forensic autopsy report stated that COVID-19 associated pneumonia was a contributing cause of death. *Id*. at ___; slip op at 2. This Court explained:

> The services that allegedly caused the injury in this case were not given "in support of this state's response to the" pandemic. This lawsuit stems entirely from the beating inflicted upon the decedent by his roommate. The record suggests that the decedent did not contract COVID-19 until after he was hospitalized due to an unrelated illness, and at the time of the attack, he was recovering from a gallbladder procedure. The roommate was likewise not being treated for COVID-19, and there is no suggestion that COVID-19 in some way spurred the attack. The alleged negligent act was placing him in a room with an unsafe roommate, and the alleged omission was failing to deploy adequate safeguards to protect the decedent from the roommate whom [sic] was known to be unsafe. It is clear to us that neither of those were done in support of the pandemic response. [*Id.* at ___; slip op at 3.]

Because "the claims of negligence and malpractice [arose] from the acts and omissions leading to the attack, not from the alleged shortcomings in treatment[,]" the panel determined that there was "absolutely no connection between the alleged malpractice and the pandemic" and thus defendant was not entitled to immunity under MCL 691.1475. *Id*. at ___; slip op at 4. In reaching its holding, the *Skipper-Baines* panel distinguished *Warren* on the basis that, in *Warren*, "there was a clear connection between the pandemic and the services giving rise to the cause of action," whereas in *Skipper-Baines* "there is simply no connection between the pandemic and the alleged negligence/malpractice." *Id*. at ___; slip op at 5.

In this case, plaintiff presented to defendant's emergency room for suicidal ideations related to depression caused, in part, by the stress of the COVID-19 pandemic. Although plaintiff tested negative for COVID-19, she sought mental-health treatment for pandemic-related stress that contributed to her suicide risk, and while in defendant's care for this purpose, plaintiff suffered a fall allegedly resulting from defendant's decision to allow plaintiff to shower unassisted and failure otherwise to safeguard against fall risks. While the provision of healthcare services related to COVID-19 was not the direct and proximate cause of plaintiff's injuries, some connection exists between the alleged malpractice and the pandemic. See *id*. at ___; slip op at 4. Similar to the plaintiff in *Warren*, and unlike the decedent in *Skipper-Baines*, plaintiff in this case sought healthcare services related to the pandemic and was allegedly injured by subsequent acts or omissions in carrying out that care. Accordingly, we conclude that MCL 691.1475 is applicable to the healthcare services that defendant provided to plaintiff.

However, plaintiff alternatively argues that she should be granted leave to amend her complaint to include allegations and facts supporting a claim for gross negligence, which is an exception to the immunity provided by MCL 691.1475. Plaintiff asserts that defendant's "at-issue care/treatment (or lack thereof)" constituted gross negligence. The PHCIA defines "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1473(a). Plaintiff contends that defendant's actions in allowing plaintiff, a known fall risk, to shower unassisted without any special safeguards demonstrates a substantial lack of concern for whether an injury would result. Plaintiff raised this alternative argument in response to defendant's motion for summary disposition, but because the trial court determine that defendant was not entitled to immunity, it did not consider plaintiff's request for leave to amend her complaint to include a gross negligence claim as an exception to immunity. Accordingly, on remand, the trial court is directed to consider plaintiff's request for leave to amend her complaint to plead a claim of gross negligence as an exception to immunity. We remind the trial court that "[l]eave [to amend] shall be freely given when justice so requires." MCR 2.118(A)(2). See also *Michigan Head & Spine Inst, PC v Michigan Assigned Claims Plan*, 331 Mich App 262, 277; 951 NW2d 731, 741 (2019) (it is an abuse of discretion to deny leave to amend where amendment would not be futile and is in the interest of justice); *Cole v Ladbroke Racing Mich, Inc*, 241 Mich App 1, 9; 614 NW2d 169 (2000) (holding that leave to amend "ordinarily should be granted in the absence of any apparent or declared reason, such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.").

## IV. IMMUNITY UNDER THE PREP ACT

Defendant also argues that it is entitled to immunity under the PREP Act. We disagree.

The PREP Act was enacted in 2005. It authorizes the Secretary of the United States Department of Health and Human Services to make "a determination that a disease or other health condition or other threat to health constitutes a public health emergency, or . . . future . . . emergency." 42 USC 247d-6d(b)(1). If such a determination is made, the Secretary "may make a declaration . . . recommending, under conditions as the Secretary may specify, the manufacture, testing, development, distribution, administration, or use of one or more covered

countermeasures." 42 USC 247d-6d(b)(1). Once the Secretary publishes a declaration, the PREP Act provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss *caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ."* 42 USC 247d-6d(a)(1) (emphasis added).[3] The PREP Act defines "a covered person" as a healthcare professional that administered the "covered countermeasure." 42 USC 247d-6d(a)(1), (i)(2)(B)(iv), (i)(8)(A). A "covered countermeasure" includes "a qualified pandemic or epidemic product (as defined in [42 USC 247d-6d(i)(7)];" a FDA-approved "drug . . . biological product . . . or device" that is authorized for emergency use under the Federal Food, Drug, and Cosmetic Act; and "a respiratory protective device that is approved by the National Institute for Occupational Safety and Health . . . ." 42 USC 247d-6d(i)(1).

In March 2020, the Secretary issued a declaration under the PREP Act for countermeasures against COVID-19. See Department of Health and Human Services, Office of the Secretary, *Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19*, Fed Reg 15198, 15202 (March 17, 2020). In terms of identifying covered countermeasures, the Declaration stated:

> Covered Countermeasures are any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product. [*Id*. at 15,202.]

In order for a covered person to have immunity under the PREP Act, there must be a "causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure." 42 USC 247d-6d(a)(2)(B). Additionally, among other conditions, immunity only applies under the PREP Act if "the countermeasure was administered or used for the category or categories of diseases, health conditions, or threats to health specified in the declaration[.]" 42 USC 247d-6d(a)(3)(B). "At the very least, then, for PREP Act immunity to apply, the underlying use or administration of a covered countermeasure must have played some role in bringing about or contributing to the plaintiff's injury. It is not enough that some countermeasure's use could be described as relating to the events underpinning the claim in some broad sense." *Hampton v California*, 83 F4th 754, 764–65 (CA 9, 2023). See also *Schleider v GVDB Operations, LLC*, 121

---

[3] There is an exception to immunity under the PREP Act for injuries "proximately caused by willful misconduct." 42 USC 247d-6d(d)(1). The PREP Act defines "willful misconduct" as "an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." 42 USC 247d-6d(c)(1). The PREP Act identifies specific procedures and establishes exclusive federal jurisdiction for willful misconduct claims. See 42 USC 247d-6d(e).

F4th 149, 163 (CA 11, 2024) (denying immunity under the PREP Act where the death of the plaintiff's decedent was not "caused by," and did not "aris[e] out of," or "relat[e] to," or "result[ ] from" the "administration to or the use of . . . a covered countermeasure."); *Hudak v Elmcroft of Sagamore Hills*, 58 F4th 845, 857 (CA 6, 2023) (concluding the plaintiff's claims did not fall within the PREP Act's exception to immunity where there were no allegations that the decedent's "illness or death was caused by [the defendant's] distribution or dispersal of countermeasures, but rather by its failure to use countermeasures or to take appropriate care of him.").

In this case, even assuming defendant and its staff are "covered persons" within the meaning of the PREP Act, plaintiff's injury lacked a causal relationship to the use of a "covered countermeasure." Plaintiff alleges that she suffered injury because defendant permitted plaintiff to take a shower unattended, despite the fact that plaintiff was at high risk of falling, and failed to put any safeguards in place to prevent her from falling. Defendant argues that its staff was using protective gear and devices to prevent the spread of COVID-19 while caring for plaintiff and thus plaintiff's claims are within the scope of the PREP Act. We disagree. There is absolutely no causal relationship between a covered countermeasure and plaintiff's injury. Accordingly, defendant has not demonstrated that it is entitled to immunity under the PREP Act.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Christopher M. Murray
/s/ Sima G. Patel