**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED DECEMBER 23, 2003**

THOMAS SCHMALTZ,

    Plaintiff-Appellant,

v                                 No. 123865

TROY METAL CONCEPTS, INC., and
WESTFIELD INSURANCE COMPANY,

    Defendants-Appellees.

_____

PER CURIAM

    In this worker's compensation case, this Court is asked to determine whether a disabled employee's average weekly wage at the time of injury can be recalculated or redetermined to include discontinued fringe benefits when that employee's subsequent employment produces a partial benefit rate. We conclude that the average weekly wage that is used to establish benefit entitlement is determined at the time of injury and may not be subsequently recalculated. Postinjury employment does not affect the

time of injury average weekly wage calculation.  This was the decision reached by the Worker's Compensation Appellate Commission (WCAC), a decision which we affirm.

I

This case comes to us on stipulated facts, which we will review after setting forth the applicable provisions of law.  From this case's inception, the sole question posed by the parties is whether, and to what extent, plaintiff's discontinued fringe benefits can be included in his "average weekly wage" when determining his entitlement to wage-loss benefits.

To answer this question, we must examine several provisions in the Worker's Disability Compensation Act, MCL 418.101 *et seq.*  The act compensates workers for wage loss due to work-related injuries, but it also establishes limits for such compensation.  Since 1982, disabled workers have been entitled to receive eighty percent of their after-tax average weekly wage.  MCL 418.351(1).  However, this compensation is subject to a statutory maximum, which is ninety percent of the state average weekly wage applicable at the time of injury.  MCL 418.355(2).

The after-tax wages used to determine wage-loss benefit entitlement are calculated pursuant to MCL 418.313(1), which establishes how the "after-tax"

2

determination is made, and MCL 418.371, which establishes how the "average weekly wage" is calculated. The critical provision for purposes of this case is § 371(2), which provides:

> As used in this act, "average weekly wage" means the weekly wage earned by the employee at the time of the employee's injury in all employment, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during the disability. Any fringe or other benefit which does not continue during the disability shall be included for purposes of determining an employee's average weekly wage to the extent that the inclusion of the fringe or other benefit will not result in a weekly benefit amount which is greater than 2/3 of the state average weekly wage at the time of injury. The average weekly wage shall be determined by computing the total wages paid in the highest paid 39 weeks of the 52 weeks immediately preceding the date of injury, and dividing by 39.

The plaintiff in this case was injured in 1997. At the time of his injury, his weekly wage (or "cash" wage) was $983.59. His fringe benefits, which were discontinued, were valued at $273.96. The applicable state average weekly wage in 1997 was $591.18, two-thirds of which is $394.12. Plaintiff's "cash" weekly pay therefore far exceeded the amount under which fringe benefits may be included in the calculation of plaintiff's "average weekly wage" under § 371(2). In short, plaintiff's average weekly wage at the time of his injury was $983.59.

Plaintiff subsequently found new employment, at wages less than he earned from defendant. In accordance with MCL 418.361(1), he is entitled to weekly compensation equal to "80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage which the injured employee is able to earn after the personal injury, but not more than the maximum weekly rate of compensation, as determined under [MCL 418.355]." There is a companion statement of entitlement in the reasonable employment provisions of the act, specifically MCL 418.301(5)(b), which states that if a disabled employee "is employed and the average weekly wage of the employee is less than that which the employee received before the date of injury, the employee shall receive weekly benefits under this act equal to 80% of the difference between the injured employee's after-tax weekly wage before the date of injury and the after-tax weekly wage which the injured employee is able to earn after the date of injury, but not more than the maximum weekly rate of compensation, as determined under [MCL 418.355]."

Plaintiff proposes that, if the differential benefit entitlement discussed in §§ 361(1) and 301(5)(b) is below two-thirds of the applicable state average weekly wage

4

($394.12), his discontinued fringe benefits should now be included in his average weekly wage, to the extent that such inclusion does not result in a weekly benefit amount greater than $394.12. The worker's compensation magistrate, relying on prior decisions by the WCAC, rejected plaintiff's proposal, and the WCAC affirmed the magistrate's decision. 2002 Mich ACO 326.[1] We agree with these authorities.

II

Findings of fact made or adopted by the WCAC are conclusive on appeal, absent fraud, if there is any competent supporting evidence in the record, but a decision of the WCAC is subject to reversal if the WCAC operated within the wrong legal framework or if its decision was based on erroneous legal reasoning. *DiBenedetto v West Shore Hosp,* 461 Mich 394; 605 NW2d 300 (2000). Questions of law arising in any final order of the WCAC are reviewed by this Court under a de novo standard of review. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691; 614 NW2d 607 (2000). Unless clearly erroneous, the Courts are to give great weight to the interpretation of a statute placed upon

_____

[1] Leave to appeal was denied by the Court of Appeals in an unpublished order, entered April 24, 2003 (Docket No. 245945).

5

it by the administrative body whose job it is to apply the statute. *Hoste v Shanty Creek Mgmt, Inc,* 459 Mich 561; 592 NW2d 360 (1999).

## III

The statutory restriction on the inclusion of discontinued fringe benefits in the calculation of an employee's average weekly wage, MCL 418.371(2), reflects the Legislature's intent that fringe benefits should only be included to increase the weekly benefit amount available to employees whose other earnings, exclusive of fringe benefits, are too low to yield a weekly benefit amount that is equal to or above two-thirds of the applicable state average weekly wage. In the leading WCAC decision, *Karczewski v Gen Motors Corp,* 1994 Mich ACO 613 (1995), the WCAC adopted the following analysis provided by the magistrate in that case:

> Defendant asserts that discontinued fringe benefits are includable in the calculation of average weekly wage only to the extent necessary to bring the *full rate* up to two-thirds of the state average weekly wage. I agree.
>
> Section 418.371(2) of the Act provides that discontinued fringe benefits are includable in the computation of the average weekly wage only to the extent necessary to yield a rate up to two-thirds of the state average weekly wage for the year of injury. If the cash wage yields a rate that meets or exceeds two-thirds of the state average weekly wage, discontinued fringes are not includable. The prior section of the Act

6

provided for inclusion of discontinued fringe benefits in the average weekly wage computation under all circumstances. Obviously, a change was intended.

The present version was part of the large package of reforms that became effective in 1982. The whole thrust of the reform package was to tighten up eligibility requirements and, at the same time, improve the level of benefits for those who do qualify. Subject to maximum rates, the prior rate provisions were based on two-thirds of an employee's gross earnings. At the higher income levels, claimants are better off at the 80% after tax rate. At certain income levels, employees were better off with a rate based on two-thirds of their gross income, inclusive of fringe benefits. In permitting addition of discontinued fringes up to the point necessary to reach a rate equal to two-thirds of the state average weekly wage, I believe the Legislature intended to reduce the overall economic loss for claimants at that income level. It was not intended that eligible claimants be "worse off" under the new schedule of benefits.

Traditionally, average weekly wage is established, once and for all, as of the date of injury. Circumstances arising subsequent to that date (with the exception of later ending includable fringes) may affect the rate of compensation, but not the average weekly wage. Post-injury earnings, during periods of partial disability, operate as a credit, and in mitigation of, an employer's wage indemnity liability. The differential is created by the difference between the pre-injury and reduced post-injury earnings. Traditionally, and in the present statutory scheme, there is no indication that the Legislature intended to increase the differential by adding discontinued fringe benefits to the cash average weekly wage merely because the differential payment falls below two-thirds of the state average weekly wage. That concept runs counter to the entire mitigation/favored work doctrine.

7

> Since plaintiff's pre-injury cash wage yields a full rate in excess of two-thirds of the state average weekly wage, he is not entitled to add fringe benefits to the wage calculation. Therefore, plaintiff's claim for rate adjustment has been denied.

We agree with this analysis and note that it has been consistently followed by the WCAC each time this question has come up.

The calculation of a worker's compensation average weekly wage at the time of injury involves a two-step process that occurs "at the time of the employee's injury." First, the worker's gross weekly wages in "cash" alone are applied to the annual benefit rate tables published pursuant to MCL 418.313(2). If the resulting benefit rate indicated on the tables does not meet or exceed two-thirds of the applicable state average weekly wage, the second step is to add in the value of the worker's fringe benefits (without regard to whether they discontinue on the date of injury or at some later date), up to the point at which the resulting benefit rate indicated in the tables equals two-thirds of that state average weekly wage. It is only after this two-step process is completed that the resulting average weekly wage figure is used to determine the weekly benefit amount that worker is actually entitled to receive. According to *Karczewski*, this is the "full" weekly benefit

8

amount that is indicated in the benefit rate tables and that is based upon the worker's earnings at the time of injury, without any offsets for postinjury wages, continued wage-earning capacity, or any other type of benefit reductions and limitations, that is the focus of the two-thirds limitation on the inclusion of fringe benefits in the calculation of the average weekly wage under MCL 418.371(2).[2]

Here, plaintiff's earnings at Troy Metal Concepts were well above the kind of low income level that the inclusion of fringe benefits in § 371(2) was designed to address. Because plaintiff's gross weekly wages, exclusive of fringe benefits, were more than sufficient to result in a full weekly benefit amount under the applicable rate tables that exceeded two-thirds of the applicable state average weekly wage, his fringe benefits may not be included in the calculation of his average weekly wage. The mere fact that plaintiff may presently be entitled to receive a differential weekly benefit amount that is less than the

---

[2] Plaintiff's reliance on *Taylor v Second Injury Fund*, 234 Mich App 1; 592 NW2d 103 (1999), is misplaced. The issue there involved calculation of total and permanent (or "T&P") disability benefits. Those benefits may be increased (with the Second Injury Fund paying the difference) to the extent an employee would qualify for higher benefit rates in later years after injury. MCL 418.521(2).

full weekly amount set forth in the tables and that is less than two-thirds of the state average weekly wage for the applicable year of injury, does not provide an occasion for now including the value of discontinued fringe benefits in the determination of his average weekly wage. That average weekly wage was fixed at the time of injury and may not be recalculated. Plaintiff's underlying entitlement, or "full" benefit, has never changed.

The decision of the WCAC is affirmed.

Maura D. Corrigan
Elizabeth A. Weaver
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman


CAVANAGH and KELLY, JJ. We would grant leave to appeal.

Michael F. Cavanagh
Marilyn Kelly

10