GUARDIAN ENVIRONMENTAL SERVICES, INC
v BUREAU OF CONSTRUCTION CODES AND FIRE SAFETY

Docket No. 276564. Submitted May 7, 2008, at Detroit. Decided May 13,
2008, at 9:00 a.m. Leave to appeal sought.

Guardian Environmental Services, Inc., a licensed mechanical con-
tractor, brought an action in the Wayne Circuit Court against the
Bureau of Construction Codes and Fire Safety, seeking a declara-
tory judgment that it qualified under MCL 338.887(3)(i) of the
Electrical Administrative Act for an exception to the general
requirement that all electrical wiring must be performed by a
licensed electrical contractor. The work for which the plaintiff
claimed the exception involved replacing an existing pneumatic
energy management system with a direct digital control energy
management system. The court, William J. Giovan, J., granted the
requested declaratory judgment and enjoined the defendant from
prohibiting the plaintiff from performing the work. The defendant
appealed.

The Court of Appeals *held*:

1. MCL 338.887(3)(i) provides that a mechanical contractor
may perform maintenance, service, repair, replacement, alter-
ation, modification, reconstruction, or upgrading of control wiring
circuits and electrical component parts within existing mechanical
systems. The statute also states that energy management systems
are an example of electrical component parts or control wiring
circuits.

2. The circuit court correctly interpreted MCL 338.887(3)(i)
when deciding that the plaintiff can, pursuant to the statute,
replace the pneumatic control energy management system of an
existing mechanical system with a direct digital control energy
management system.

3. Because the defendant's interpretation of MCL
338.887(3)(i) was contrary to the intent of the Legislature, as
expressed in the unambiguous language of the statute itself, a
cogent reason existed for the circuit court not to defer to the
defendant's erroneous interpretation. Accordingly, the circuit
court did not violate the constitutional doctrine of the separation

of governmental powers and did not exceed its authority in rejecting the defendant's erroneous interpretation.

Affirmed.

LICENSES — ELECTRICAL ADMINISTRATIVE ACT — MECHANICAL CONTRACTORS.

A mechanical contractor, under a statutory exception to the general rule that all electrical wiring must be performed by a licensed electrical contractor, may replace the pneumatic control energy management system of an existing mechanical system with a direct digital control energy management system (MCL 338.887[3][i]).

*Dickinson Wright PLLC* (by *Frank R. Mamat, Joseph W. DeLave*, and *Charles G. Goedert*) for the plaintiff.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Richard P. Gartner* and *Susan Przekop-Shaw*, Assistant Attorneys General, for the defendant.

Before: OWENS, P.J., and METER and SCHUETTE, JJ.

PER CURIAM. Defendant, the Bureau of Construction Codes and Fire Safety (the Bureau),[1] appeals by leave granted from the trial court's final order granting declaratory and injunctive relief to plaintiff Guardian Environmental Services, Inc. We affirm.

This declaratory judgment action arose from a dispute between plaintiff, a licensed mechanical contractor, and the Bureau, which was charged with the enforcement of the Electrical Administrative Act (EAA), MCL 338.881 *et seq.*[2] In August 2004, plaintiff

---

[1] The Bureau of Construction Codes and Fire Safety is part of the Michigan Department of Labor and Economic Growth.

[2] The question presented by the parties on appeal is one of statutory construction, the parties did not present extensive evidence regarding the nature, purpose, and makeup of the energy management systems that plaintiff planned to install, and the trial court did not engage in

contracted with the Allen Park School District to perform renovation work in five of the district's school buildings. Specifically, plaintiff was hired to replace existing pneumatic energy management systems with direct digital control energy management systems in four of the school buildings and to replace a hybrid energy management system with a direct digital control energy management system in the fifth school building. Replacement of the existing energy management systems required plaintiff to install low-voltage wiring and communications network cabling. Plaintiff intended to perform this work itself instead of subcontracting the work to a licensed electrical contractor.[3] Plaintiff maintained that because it was a licensed mechanical contractor and because the work involved the "replacement" and "upgrading" of energy management systems that control existing mechanical systems, MCL 338.887(3)(i) permitted it to perform this work without an electrical contractor's license.

On March 17, 2005, William Fox, a state inspector for Wayne County, ordered plaintiff to cease installing low-voltage wiring at the Allen Park project. Concerned that Fox's action would affect its other projects, including work that it was performing for the Warren Consolidated School District, plaintiff contacted Virgil Monroe, chief of the Bureau's electrical division. Monroe determined that MCL 338.887(3)(i) did not allow plaintiff to install low-voltage wiring and forwarded to Chuck Goerlitz, plaintiff's manager, a May 1998 bulletin authored by Tom Kriegish, the former chief of the

significant fact-finding. Therefore, we accept the allegations in the complaint as true for purposes of presenting pertinent background facts in this opinion.

[3] Plaintiff subcontracted the high-voltage wiring associated with the project to a licensed electrical contractor.

electrical division, which set forth the Bureau's position regarding what work was permissible without an electrical contractor's license pursuant to MCL 338.887(3)(i).[4]

Goerlitz requested an appeal of Monroe's decision that plaintiff was not allowed to install the low-voltage electrical wiring. He also noted that the term "existing mechanical systems" required clarification and requested a statement of the Bureau's position on the meaning of the phrase. In response to Goerlitz's communications, Monroe confirmed that the May 1998 article set forth the Bureau's "complete and final position" on work that may be performed without an electrical contractor's license pursuant to MCL 338.887(3)(i). With respect to the meaning of the phrase "existing mechanical systems," Monroe explained:

> Existing mechanical systems are not defined in the Act. According to Webster's New World Dictionary, Third College Edition, "Existent" is defined as 1 — having existence or being; existing, 2 — existing now; present; immediate. Using this definition, the term "existing mechanical systems" would be systems existing at the time of service, repair, replacement, etc. 7(3)(i) would cover these installations. It would not include systems removed then changed to a different type of system, such as, the replacement of an

---

[4] The May 1998 article provides in relevant part:

Recently, several individuals have asked bureau staff whether a mechanical contractor or authorized master plumber may perform work relating to electrical installations, without an electrical license.

* * *

Existing pneumatic control systems may be modified, upgraded, or replaced by a mechanical contractor. However, when an existing pneumatic system is abandoned, and replaced with a new electrical control system, it must be installed by a licensed electrical contractor.

existing pneumatic controlled system with a new electrical controlled system. In this instance a licensed electrical contractor would be required.

This is the final position of the Electrical Division.

Plaintiff requested that the Electrical Administrative Board overrule Monroe's decision. However, at its October 7, 2005, meeting, the Electrical Administrative Board unanimously upheld Monroe's interpretation of MCL 338.887(3)(i). Plaintiff then petitioned the Michigan Department of Labor and Economic Growth for declaratory relief, which the department denied.

On February 27, 2006, plaintiff filed an action seeking a declaration from the trial court that an exception to the requirement that all electrical wiring be performed by an entity holding an electrical contractor's license set forth under MCL 338.887(3)(i) applied to the work plaintiff sought to perform, namely, the replacement of an existing pneumatic energy management system with a direct digital control energy management system. The trial court granted plaintiff's request for declaratory and injunctive relief on August 7, 2006.[5]

On appeal, the Bureau argues that the trial court's interpretation of MCL 338.887(3)(i) was contrary to the plain language of the statute. We disagree. We review de novo both questions of law arising from a declaratory judgment action and questions of statutory interpreta-

---

[5] The trial court's order stated, in pertinent part:

[P]ursuant to the exemption provided in MCL 338.887(3)(i), [plaintiff], a licensed mechanical contractor, may install low voltage electrical wiring when replacing, modifying or upgrading energy management systems within existing mechanical systems, including, but not limited to, the replacement of a pneumatic control energy management system with a direct digital control energy management system.

tion. *Green Oak Twp v Munzel*, 255 Mich App 235, 238; 661 NW2d 243 (2003); *Dessart v Burak*, 252 Mich App 490, 494; 652 NW2d 669 (2002), aff'd 470 Mich 37 (2004). We review the trial court's decision to grant or deny declaratory relief for an abuse of discretion. *Gauthier v Alpena Co Prosecutor*, 267 Mich App 167, 170; 703 NW2d 818 (2005). In the absence of fraud, findings of fact made or adopted by an administrative agency are conclusive on appeal if they are supported by competent evidence on the record; however, the decision of an administrative agency may be reversed if the agency's decision was based on erroneous legal reasoning or if the agency operated within the wrong legal framework. *Schmaltz v Troy Metal Concepts, Inc*, 469 Mich 467, 471; 673 NW2d 95 (2003).

In interpreting a statute, the fundamental task of a court is to "discern and give effect to the Legislature's intent as expressed in the words of the statute." *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). Where the plain and ordinary meaning of the statutory language is clear, further judicial construction is unwarranted. *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 720; 691 NW2d 1 (2005). See also *DiBenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000). Judicial construction of a statute is proper only where reasonable minds could differ about the meaning of the statute. *Adrian School Dist v Michigan Pub School Employees' Retirement Sys*, 458 Mich 326, 332; 582 NW2d 767 (1998).

We accord to every word or phrase of a statute its plain and ordinary meaning, unless a term has a special, technical meaning or is defined in the statute. *Casco Twp v Secretary of State*, 472 Mich 566, 593 n 44; 701 NW2d 102 (2005); MCL 8.3a. In ascertaining the plain and ordinary meaning of undefined statutory terms, we

may rely on dictionary definitions. *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004).

MCL 338.887 provides, in pertinent part:

(1) Except as otherwise provided in this act or in subsection (3), a person, firm, or corporation shall not engage in the business of electrical contracting unless the person, firm, or corporation has received from the board or from the appropriate municipality an electrical contractor's license.

(2) Except as otherwise provided in this act or in subsection (3), a person, other than a person licensed under this act and employed by and working under the direction of a holder of an electrical contractor's license, shall not in any manner undertake to execute any electrical wiring.

(3) A license under this act is not required in the execution of the following classes of work:

\* \* \*

(i) Work performed by mechanical contractors licensed in classifications listed in section 6(3)(a), (b), (d), (e), and (f) of the Forbes mechanical contractors act, 1984 PA 192, MCL 338.976, plumbing contractors licensed under 1929 PA 266, MCL 338.901 to 338.917, and employees of persons licensed under those acts while performing maintenance, service, repair, replacement, alteration, modification, reconstruction, or upgrading of control wiring circuits and electrical component parts within existing mechanical systems defined in the mechanical and plumbing codes provided for in the Stille-DeRossett-Hale single state construction code act, 1972 PA 230, MCL 125.1501 to 125.1531, including, but not limited to, energy management systems, relays and controls on boilers, water heaters, furnaces, air conditioning compressors and condensers, fan controls, thermostats and sensors, and all interconnecting wiring associated with the mechanical systems in buildings which are on the load side of the unit

disconnect, which is located on or immediately adjacent to the equipment, except for life safety systems wiring.

Here, each party argues that the plain language of the statute supports its interpretation of MCL 338.887(3)(i). Plaintiff contends that under the plain meaning of MCL 338.887(3)(i), a mechanical contractor may replace an energy management system within an existing mechanical system. The Bureau, however, asserts that the statutory exception set forth under MCL 338.887(3)(i) unambiguously allows mechanical contractors only to replace wiring and other electrical components within existing energy management systems.

In making this argument, the Bureau contends that the statute would allow a mechanical contractor to replace a pneumatic energy management system with another pneumatic energy management system. The Bureau also contends that the statutory exception provided under MCL 338.887(3)(i) allows plaintiff to remove a direct digital control energy management system, but it does not permit plaintiff to replace an existing pneumatic energy management system with a direct digital control energy management system. However, the Bureau's proposed interpretation of the term "replacement" imposes the additional, extra-statutory requirement that the substituted system must be of like kind.

Instead, we conclude that the Legislature intended to allow plaintiff to replace an existing pneumatic or hybrid energy management system with a direct digital control energy management system within an existing mechanical system. *Random House Webster's College Dictionary* (1997) defines "replacement" as "the act of replacing" and as "a person or thing that replaces another," and defines "replace" as "to assume the

function of; substitute for: *to replace gas lights with electric lights.*" Especially in light of the example of "replace" included in this definition, we conclude that the proper interpretation of "replacement" as used in MCL 338.887(3)(i) includes the abandonment or removal of a pre-existing defective or obsolete pneumatic energy management system and the installation of a new direct digital control system for an existing mechanical system.

The statutory exception included in MCL 338.887(3)(i) provides that a mechanical contractor may "perform[] maintenance, service, repair, replacement, alteration, modification, reconstruction, or upgrading of control wiring circuits and electrical component parts within existing mechanical systems . . . ." According to the statute, an example of the "electrical component parts" or "control wiring circuits" "include[es], but [is] not limited to, energy management systems . . . ." MCL 338.887(3)(i). Thus, an energy management system is one example of an electrical component part of a pre-existing mechanical system that a licensed mechanical contractor is permitted to replace. The Legislature's choice of the term "replacement" reflects its intent that an electrical contractor's license is not required for the removal of a pneumatic energy management system and the installation of a direct digital control energy management system in a pre-existing mechanical system. We conclude that the trial court's decision that the exception set forth under MCL 338.887(3)(i) allowed plaintiff to perform the disputed work was based on a correct, plain-language interpretation of the statute.

Next, the Bureau argues that the trial court exceeded its authority when it improperly declined to defer to the Bureau's interpretation of the statute. We disagree. An administrative agency's interpretation of a statute it is charged with enforcing is entitled to great weight and

we will overrule the interpretation only if it is clearly erroneous. *Schmaltz, supra* at 471. However, if an administrative agency's interpretation of a statute is contrary to the statute's plain meaning, the intent of the Legislature as expressed in the statutory language must prevail.[6] *By Lo Oil Co v Dep't of Treasury,* 267 Mich App 19, 49-50; 703 NW2d 822 (2005).

The Bureau asserts that the interpretation of a statute by an agency charged with enforcing the statute should not be overruled in the absence of "cogent reasons." See *Oakland Schools Bd of Ed v Superintendent of Pub Instruction,* 401 Mich 37, 41; 257 NW2d 73 (1977), quoting *United States v Moore,* 95 US 760, 763; 24 L Ed 588 (1877). However, an agency's interpretation of a statute contrary to the plain language of the statute constitutes a compelling, "cogent" reason for overruling the agency's clearly erroneous interpretation. See *Consumers Power Co v Pub Service Comm,* 460 Mich 148, 157 n 8; 596 NW2d 126 (1999) ("An agency

---

[6] Our Supreme Court has granted leave to appeal in another case involving the issues of: "(1) what legal framework appellate courts should apply to determine the degree of deference due an administrative agency in its interpretation if a statute within its purview; [and] (2) whether the Court of Appeals erred in deferring to the Michigan Public Service Commission's interpretation of MCL 484.2502(1)(a) . . . ." *SBC Michigan v Pub Service Comm,* 480 Mich 977 (2007). See also *In re Complaint of Rovas Against Ameritech Michigan,* 276 Mich App 55; 740 NW2d 523 (2007). Our Supreme Court's decision in *SBC Michigan* could alter the common law regarding the deference that must be given to agency interpretations. However, under existing law, deference to an administrative agency's interpretation of a statute is proper only where reasonable minds could differ regarding the meaning of the statute, i.e., the statutory language is ambiguous. *By Lo Oil Co v Dep't of Treasury,* 267 Mich App 19, 49-50; 703 NW2d 822 (2005). Further, pursuant to the language of this Court in *By Lo Oil Co,* if an administrative agency's interpretation of a statute is contrary to the plain meaning of the statute, the agency's interpretation is clearly erroneous. *Id.* at 49-50. Where, as here, the statutory language is unambiguous, the statute must be applied as written. *Pohutski, supra* at 683.

interpretation cannot overcome the plain meaning of a statute."). Mindful that one branch of government may not exercise powers conferred to other branches of government, Const 1963, art 3, § 2, the Bureau's contention that the trial court's failure to defer to its construction of MCL 338.887(3)(i) violated the "separation of powers" doctrine ignores the significant concepts of checks and balances and judicial review. The judiciary alone is the final authority on questions of statutory interpretation and must overrule administrative interpretations that are contrary to clear legislative intent. *Office Planning Group, Inc v Baraga-Houghton-Keweenaw Child Dev Bd*, 472 Mich 479, 491 n 23; 697 NW2d 871 (2005). See also *Chevron USA Inc v NRDC, Inc*, 467 US 837, 843 n 9; 104 S Ct 2778; 81 L Ed 2d 694 (1984).

Because the Bureau's construction of MCL 338.887(3)(i) was contrary to the intent of the Legislature, as expressed in the unambiguous language of the statute itself, a cogent reason existed for the trial court not to defer to the Bureau's erroneous interpretation. Accordingly, the trial court neither violated the "separation of powers" doctrine nor exceeded its authority in rejecting the Bureau's invitation to defer to its construction of MCL 338.887(3)(i).

Affirmed.