*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DR. SCOTT E. THIELBAR, Individually and as
Trustee of the SCOTT E. THIELBAR TRUST,

        Plaintiff-Appellant,

v

LONNIE J. CARROLL, KATHLEEN M.
CARROLL, STEPHEN C. DIX, DANIEL P.
SWIER, TEDDY R. KISER, and HOWARD G.
HARDESTY,

        Defendants-Appellees.

UNPUBLISHED
January 16, 2025
11:38 AM

No. 369730
Muskegon Circuit Court
LC No. 2021-004612-CZ

Before: PATEL, P.J., and MURRAY and YATES, JJ.

PER CURIAM.

In this action involving the interpretation of restrictive covenants, plaintiff Dr. Scott E. Thielbar, individually and as trustee of the Scott E. Thielbar Trust, appeals as of right the trial court's judgment granting in part and denying in part his requested relief. We affirm in part and reverse in part, and remand to the trial court for entry of a judgment consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff and defendants Lonnie J. Carroll, Kathleen M. Carroll, Stephen C. Dix, Daniel P. Swier, Teddy R. Kiser, and Howard G. Hardesty, acting *in propria persona*, all own lots in the Roodmont Subdivision.[1] At the time he initiated this action, plaintiff owned lots 13 and 14,[2] in between which is a strip of land dedicated to the Roodmont Subdivision owners for use as an easement to access what is known as Outlot A and Mona Lake. Specifically, the Roodmont

---

[1] For some undisputed facts, we reference plaintiff's complaint.

[2] Plaintiff has since sold lot 13.

Subdivision restrictive covenant states, "Outlot A shall be dedicated for the sole use of the entire Subdivision owners to develop for such uses and purposes as they see fit . . . ."

In a prior lawsuit plaintiff filed in 2018, the court denied plaintiff's claims of complete ownership over the land by way of vacation, adverse possession, or abandonment. Instead, the court ruled that the land was an easement dedicated to the lot owners for private use, and that it could not "vacate or alter the platted access to out-lot A."[3]

On January 25, 2021, defendant Dix recorded with the Muskegon County Register of Deeds a document titled "Protective Covenants Roodmont Subdivision, residential lots 1-95," stating, in part:

> Let the record show that as a result of: Judgement of File No. 18-1678-CH January 31, 2020 (platted access to Out-lot A) and the court order 5/4/2020, Honorable Judge William C. Marietti.
>
> The following language and nominations were submitted for consideration to Roodmont Subdivision Lot Owners. The majority of Roodmont Subdivision lot owners voted in favor of the following language and nominations.
>
> * * *
>
> Let this record reflect the replacement of the committee composed of Paul R. Beardsley, Raymond Beardsley, and William Burton Taylor.
>
> "Said committee shall act and serve until September 30th 1945, at which time the then record owners of a majority of the lots which are subject to the covenants herein set forth may designate in writing dully [sic] recorded among the land records their authorized representative who thereafter shall have all the powers, subject to the limitations, as were previously delegated therein to the aforesaid committee."
>
> As there is no known record of subsequent committee members, we will constitute a new committee. The new committee will oversee the maintenance and use of:
>
> - Outlot A, per covenant
> - Lot 36 and easement thereto . . . for playground purposes. Between lot 28 & 29. Covenant K
> - The access between Lot 2 & 3,
> - The access between lot 13 & 14,
> - The access West of lot 17. As per the Plat of "Roodmont", Sheet #2.

---

[3] In response to defendants' arguments in the instant action that the strip of land at issue is an "access," not an easement, the court ruled, "The previous opinion of the court following the trial of case 2018-001678-CH sets forth Defendant has an easement that Plaintiff was unable to extinguish."

- And All Protective Covenants

Outlot A shall be dedicated for the sole purpose of the entire subdivision owners to develop for such uses and purposes as they see fit with the consent of the committee. Covenant L

The committee shall be comprised of 5 members + their alternates. Originally there were 3 members with three alternates. The 5 members and alternates will serve until September 2025 (see Covenant M). As per Covenant M the committee and Roodmont Subdivision Owners would have up to five years to review the covenants and make any further changes that would be considered desirable and advantageous.

That document altered the Roodmont Subdivision restrictive covenants and referred to various portions of the covenants, including Paragraphs B, L, and M which discuss the original committee, outlot A, and the ability to amend. After receiving letters from the committee comprised of defendants in June and July 2021, informing him of the committee's formation and demanding that he remove boulders, irrigation lines, and other property from the easement discussed above, plaintiff initiated the instant action on October 25, 2021.

In Count I, plaintiff sought a declaratory judgment regarding the scope of the easement, asserting he had the right to maintain the easement. In Count II, plaintiff sought a declaratory judgment that the committee had no authority, and that even if the committee was properly formed in accordance with the restrictive covenants, it lacked authority to govern and maintain the easement. Plaintiff alleged that he was never notified of the intention to form a committee, and that Paragraph B of the restrictive covenants designated a committee until September 1945, at which time the then record owners could have, but did not, designate a representative.

The trial court denied defendants' initial motion to dismiss plaintiff's claims, after which defendants answered the complaint, asserting the legal authority to form the committee "as the voting exceeded the 50% majority with 49 lots voting to enact the committee out of the eligible 94 lots". They then moved for summary disposition pursuant to MCR 2.116(C)(7) and (10), arguing in part that res judicata barred plaintiff's claims, and that they derived the authority to form the committee from Paragraph M of the restrictive covenant which addresses amendment, stating, "There is no ambiguity in the Covenant . . . as it relates to having a Committee (Paragraph L) and how to make changes to Covenant (Paragraph M)."

Plaintiff opposed the motion, arguing the plain language of the restrictive covenant only allowed for continuation of the committee beyond 1945 under Paragraph B if the then record owners of subdivision lots in 1945 designated a successor committee, which did not occur. The court denied defendants' summary-disposition motion and the case proceeded to trial. The parties reasserted their arguments in their trial briefs, with plaintiff adding that the committee also could not have been validly formed under the amendment portion of the restrictive covenants without unanimous consent.

The court held a bench trial, ultimately granting in part and denying in part plaintiff's requested relief. In the written opinion that followed, as to Count I, the court ruled that the

easement was for pedestrian use only, stating further: "[T]he Roodmont subdivision may maintain the stairway and steps as historically placed for its use and proper enjoyment of the access point to outlot A and Mona Lake. Plaintiff may not obstruct or destroy said stair and/or steps." With regard to Count II, the court stated defendants relied on Paragraph M of the restrictive covenants governing amendment to form the committee, and agreed it was validly formed by a majority vote of the Roodmont Subdivision property owners, but held:

> [T]he Amended Protective Covenants filed on January 27, 2021 at Liber 4246 Page 360 . . . exceeds the committee's power as it relates to easement property use.

> \* \* \*

> The Defendants may not alter the scope of any easement or use of outlot A or the access points. These properties encompass easements which the Roodmont subdivision own over servient lots. The committee may not increase or modify in any way the burden on the lot property owners by changing the terms of the easements or use on said properties. Maintaining the properties for the Roodmont subdivisions [sic] use as allowed by the easements would be an allowable activity of the committee.

The trial court codified its ruling in a November 6, 2023 judgment, and denied plaintiff's motion for reconsideration of that judgment.

## II. ANALYSIS

Plaintiff does not challenge the court's ruling on Count I regarding the scope of the easement, though it is somewhat pertinent to the issues raised regarding the court's ruling on Count II. As to the committee, plaintiff's arguments can be summarized as follows:

> The Trial Court errored in finding that the restrictive covenants could be amended by less than unanimous consent of all impacted parties. It naturally follows then that the Trial Court's confirmation that the Defendant committee, established through these amendments, was a valid committee, with the ability to govern and maintain the easement, was also in error. To the extent the Trial Court alternatively found that Defendant's committee was validly formed as an extension of the long defunct initial building oversight committee, this too was in error.

### A. STANDARD OF REVIEW

" 'The interpretation of restrictive covenants is a question of law that this Court reviews de novo.' " *Eager v Peasley*, 322 Mich App 174, 179; 911 NW2d 470 (2017), quoting *Johnson Family Ltd Partnership v White Pines Wireless, LLC*, 281 Mich App 364, 389; 761 NW2d 353 (2008). "We review the trial court's decision to grant or deny declaratory relief for an abuse of discretion." *Guardian Environmental Servs, Inc v Bureau of Constr Codes*, 279 Mich App 1, 6; 755 NW2d 556 (2008).

Restrictive covenants are considered contracts. *Eager*, 322 Mich App at 179-180.

> Because of this Court's regard for parties' freedom to contract, we have consistently supported the right of property owners to create and enforce covenants affecting their own property. Such deed restrictions generally constitute a property right of distinct worth. Deed restrictions preserve not only monetary value, but aesthetic characteristics considered to be essential constituents of a family environment. If a deed restriction is unambiguous, we will enforce that deed restriction as written unless the restriction contravenes law or public policy, or has been waived by acquiescence to prior violations, because enforcement of such restrictions grants the people of Michigan the freedom freely to arrange their affairs by the formation of contracts to determine the use of land. [*Id.* at 180, quoting *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 214; 737 NW2d 670 (2007) (quotation marks omitted).]

The overriding goal when construing restrictive covenants is to ascertain the intent of the parties. *Eager*, 322 Mich App at 180 (quotation marks and citation omitted).

> [T]he language employed in stating the restriction is to be taken in its ordinary and generally understood or popular sense, and is not to be subjected to technical refinement, nor the words torn from their association and their separate meanings sought in a lexicon. [*Id.* at 180-181 (quotation marks and citations omitted; alteration in original).]

"[C]ourts must give effect to the instrument as a whole where the intent of the parties is clearly ascertainable." *Brown v Martin*, 288 Mich App 727, 731; 794 NW2d 857 (2010) (quotation marks and citation omitted).

The most obviously relevant portion of the Roodmont restrictive covenants is that which discusses the original subdivision committee at Paragraph B, quoted in the document recording the newly-formed committee.[4] However, also cited in the recording document and more heavily focused on by defendants and relied on by the court in making its decision was the portion governing amendment of the restrictive covenants at Paragraph M. We will analyze each.

We look first to the language of Paragraph B, which states in part:

> No building shall be erected, placed, or altered on any building plot in this subdivision until the building plans, specifications, and plot plan showing the location of such building have been approved in writing by a majority of a committee composed of Paul R. Beardsley, Raymond Beardsley, and William Burton Taylor, or their authorized representative, for conformity and harmony of

---

[4] Indeed, the document states that the committee will replace the original committee members, listing those committee members by name.

external design with existing structures in the subdivision; and as to the location of the building with respect to property and building setback lines.

\* \* \*

Said committee shall act and serve until Sept. 30, 1945, at which time the then record owners of a majority of the lots which are subject to the covenants herein set forth may designate in writing duly recorded among the land records their authorized representative who thereafter shall have all of the powers, subject to the same limitations, as were previously delegated herein to the aforesaid committee.

Plaintiff argues that to the extent the trial court found the newly formed committee to be an extension of the original committee from 1940, it erred. Specifically, he asserts that use of the word "may" gave the property owners in 1945 the option to continue the committee past September 30, 1945, but did not require them to do so, and "the drafters plainly indicated that the committee could only persist past 1945 if 'the then record owners of a majority of the lots which are subject to the covenants herein set forth' elect to designate a successor committee."

"May" as opposed to "shall" or "must" is a permissive term, indicating that the committee or an authorized representative *could* be extended for the purposes listed in that paragraph beyond September 30, 1945. See *True Care Physical Therapy, PLLC v Auto Club Group Ins Co*, 347 Mich App 168, 182-183; ___ NW3d ___ (2023). And the designation of an authorized representative in Paragraph B is tied to the expiration date for the original committee, as the paragraph states, "Said committee shall act and serve until Sept. 30, 1945, *at which time* the then record owners of a majority of the lots" may designate in writing an authorized representative. Accordingly, Paragraph B could not have validly served as the basis for formation of the subject committee.

The language in Paragraph B can be contrasted with that in Paragraph M of the restrictive covenants. Paragraph M provides:

These covenants are to run with the land and shall be binding on all parties and all persons claiming under them until January 1, 1975, at which time said covenants shall be automatically extended for successive periods of ten years unless by a vote of the majority of the then owners of the lots it is agreed to change the said covenants in whole or in part.

Under Paragraph M, the time for amendment is tied to the automatic extension period, rather than the January 1, 1975 expiration for the covenants. With no opportunity for amendment by a vote after 1975, there would be no need to extend the covenants for ten-year periods.

Plaintiff argues otherwise, asserting, "The restrictive covenants provide a limited opportunity for amendment, which expired on January 1, 1975." He cites an unpublished decision of this Court and asserts the Court there examined the exact same amendment language at issue here, ultimately remanding to the trial court to establish the record owners from 1975. In response, defendants cursorily assert:

The covenant is a legally binding document. It spells out specifically how to make changes to the covenant, with only a majority needed. The trial court did not error in finding the committee was validly formed and that the limited powers of the committee are valid pursuant to the vote.

When the votes were taken, the individuals that voted for the committee were the then lot owners in the subdivision.

In *Brown*, 288 Mich App at 729, this Court examined a restrictive covenant amendment provision very similar to Paragraph M, which stated:

These covenants are to run with the land and shall be binding on all parties and all persons claiming under them for a period of twenty-five years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of ten years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part.

There, the Court did not hold that the restrictive covenants could only be amended by a majority of those who owned lots at the time the covenants originally expired. Rather, the Court held that an amendment to the covenants passed by a majority of lot owners in the middle of one of the 10-year extension periods could not take effect until the end of that period, as it was not unanimously passed. *Id*. at 732-733. The Court reasoned, "[T]he plain language of the covenant causes the reference to 'periods of ten years' to be a restriction regarding the frequency of amendment by less than a unanimous vote." *Id*. at 732.

As the language of Paragraph M is substantively similar to that in *Brown*, this interpretation applies here. Testimony at trial demonstrated that a majority of lot owners voted to amend the restrictive covenants to add a committee, and plaintiff does not dispute this fact. However, given that the Roodmont restrictive covenants renewed every ten years starting on October 1, 1975, and the amendment adding a committee was recorded in 2021, in the middle of a 10-year extension, the trial court correctly concluded that the committee was validly formed, but erred by failing to find that because it was amended by less than a unanimous vote, it could not take effect until the end of that 10-year period, on October 1, 2025. On this basis, we reverse in part the trial court's judgment.

## C. SCOPE OF THE COMMITTEE'S RESPONSIBILITIES

Finally, plaintiff argues that even if the committee was validly formed, its powers would be limited to the powers delegated to it by the restrictive covenants. As provided above, the court ruled:

The Defendants may not alter the scope of any easement or use of outlot A or the access points. These properties encompass easements which the Roodmont subdivision own over servient lots. The committee may not increase or modify in any way the burden on the lot property owners by changing the terms of the easements or use on said properties. Maintaining the properties for the Roodmont

subdivisions [sic] use as allowed by the easements would be an allowable activity of the committee.

And in its judgment, the trial court stated, "Roodmont Committee may maintain the easement including the construction and maintenance of steps located with the easement as those steps have historically existed, and Plaintiff may not obstruct or destroy said steps."

In *Conlin v Upton*, 313 Mich App 243, 264; 881 NW2d 511 (2015), cited by plaintiff in support of his argument, this Court reaffirmed "this state's common-law requirement that covenants and restrictions be unanimously approved by all . . . affected property owners to the extent [they] impose burdens on the individual members' real property beyond those expressly provided in the [original] covenants . . . ." The Court stated further, however, that where covenants grant the power to amend with less than unanimous approval, and amendment is made in accordance with these covenants, added restrictions contained in those amendments would be valid and enforceable "even though they differ in nature and extent from those contained in the original covenants . . . ." *Id*. at 262.

Here, the trial court's ruling that the committee could maintain the subject easement did not invalidly expand the covenants or impose additional burdens. It is true that, per Paragraph B of the Restrictive Covenants, the original committee was tasked with approval of building and plot plans, not the maintenance of the subdivision's easements. But it is undisputed that a majority of lot owners voted to amend the restrictive covenants to appoint a committee with certain powers. And, as owners of lots within the subdivision, defendant committee members are entitled to use of the easement.

> "An easement is the right to use the land of another for a specified purpose," and an easement may be created "by express grant, by reservation or exception, or by covenant or agreement." The "use of an easement must be confined strictly to the purposes for which it was granted or reserved," and "[t]he owner of the fee subject to an easement may rightfully use the land for any purpose not inconsistent with the easement owner's rights." The language of the instrument that granted the easement determines the scope of the easement holder's rights. "Once granted, an easement cannot be modified by either party unilaterally." [*Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 399-400; 964 NW2d 846 (2020) (citations omitted).]

The trial court determined the scope of the easement as follows:

> [T]his court finds the scope of the Roodmont subdivision easement of access over the subject property is for pedestrian use only.
>
> * * *
>
> This court finds the Roodmont subdivision may maintain the stairway and steps as historically placed for its use and proper enjoyment of the access point to outlot A and Mona Lake. Plaintiff may not obstruct or destroy said stair and/or steps.

Plaintiff does not contest this ruling, which appears consistent with Paragraph L of the restrictive covenants, stating, "Outlot A shall be dedicated for the sole use of the entire Subdivision owners to develop for such uses and purposes as they see fit . . . ." Accordingly, the trial court did not err when it determined that the newly formed committee could maintain the easement.

Affirmed in part, reversed in part, and remanded for entry of a judgment consistent with this opinion.

/s/ Sima G. Patel
/s/ Christopher M. Murray
/s/ Christopher P. Yates