*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NORTHLAND RADIOLOGY, INC.,

        Plaintiff-Appellant

v

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

        Defendant-Appellee

FOR PUBLICATION
March 25, 2026
10:51 AM

No. 374214
Oakland Circuit Court
LC No. 2024-206950-NF

Before: PATEL, P.J., and SWARTZLE and MARIANI, JJ.

PATEL, J.

The no-fault act, MCL 500.3101 *et seq*., authorizes an applicant or named insured to choose to opt of out of personal protection insurance (PIP) benefits payable under MCL 500.3107(1)(a)[1] if all the criteria outlined in MCL 500.3107d are met. This election applies to the applicant or named insured, their spouse, resident relatives, and any other person who would have had a right to claim PIP benefits under the policy but for the election. MCL 500.3107d(5). If the applicant or named insured does not make an effective election, then the policy is considered to provide unlimited PIP medical coverage. MCL 500.3107d(4).

In this case, the named insured had qualified health coverage under parts A and B of Medicare, elected to opt out of PIP medical coverage, and received a reduction in her premium in exchange for the opt out. The insured certified on the opt-out form that she had health coverage under parts A and B of Medicare *and* all resident relatives had either qualified health coverage or were covered under another auto policy with PIP medical coverage. But the insured's resident relative did not have the described required other coverage. The trial court concluded that

---

[1] MCL 500.3107(1)(a) provides that PIP benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Throughout this opinion, we refer to "allowable expenses" described in MCL 500.3107(1)(a) as PIP medical coverage.

defendant, Allstate Fire and Casualty Company, was entitled to rely on the insured's statements on the opt-out form, and granted summary disposition to Allstate under MCR 2.116(C)(10).

We hold that the plain and unambiguous language in MCL 500.3107d provides that all the criteria outlined in MCL 500.3107d must be met to effectively opt out of PIP medical coverage. Because all the criteria were not met in this case, the insured did not make an effective election to opt out. Absent any other valid defenses, the subject policy is considered to provide unlimited PIP medical benefits. For the reasons stated in this opinion, we reverse and remand for further proceedings.

## I. BACKGROUND

On February 1, 2023, Dwight Turner and his mother, Jacqueline Springer, were involved in an automobile collision. Turner was injured in the collision and treated at Northland Radiology, Inc.'s medical facility from February 20, 2023, through February 23, 2024. On his first date of service, Turner executed an assignment of rights form assigning Northland Radiology his rights of recovery for payment for services.

At the time of the accident, Turner did not have his own no-fault insurance policy and purportedly had healthcare coverage through Medicaid.[2] The police report indicates that Turner and Springer lived at the same address at the time of the accident. Springer had a no-fault insurance policy issued by Allstate, but Turner was not listed as a named insured on the policy, a licensed driver, or a member of the household.[3]

When Springer renewed her policy in September 2022, she executed a form indicating that she elected to not maintain PIP medical coverage, effective October 12, 2022, in exchange for a reduced policy premium. Instead, Springer elected what was designated as "Option 6," which provided as follows:

---

[2] The record includes evidence of coverage effective September 25, 2024, which is after Turner's treatment at Northland Radiology's facility had ended.

[3] The insurance policy lists a different address for Springer than the address listed on the police report.

| | Option 6: No **PIP medical** coverage for anyone covered by this policy |
| --- | --- |
| | You may select this option if <u>both</u> of the following are true: |
| | • The **applicant** or **named insured** has coverage under both Medicare Parts A and B, AND |
| | • The **applicant's** or **named insured's** spouse and all **resident relatives** covered by the policy have qualified health coverage or are covered under another auto policy with **PIP medical** coverage. |
| Risks | NO **PIP MEDICAL** COVERAGE WILL BE PROVIDED UNDER YOUR POLICY. |
| | You and any other persons covered by this policy will not have **PIP medical** coverage. You and those persons may have to rely on other health coverage to pay for medical expenses resulting from an auto accident, which may not cover all products and services that **PIP medical** provides. |
| | • Persons relying on **qualified health coverage** to pay for auto accident injuries should be aware that, unlike auto insurance, health insurance stops paying when the policy ends or is canceled. |
| | • If anyone covered by the policy loses **qualified health coverage**, you must obtain either replacement **qualified health coverage** or **PIP medical** coverage within 30 days of loss of the coverage. |
| | • Within 30 days of losing **qualified health coverage**, if anyone covered by the policy is injured in an auto accident, coverage will be provided by the **Michigan Assigned Claims Plan** up to $2,000,000 if they have no other **qualified health coverage** or **PIP medical** coverage. |
| | • A person who has not obtained **qualified health coverage** or **PIP medical** coverage within 30 days of the loss of coverage will not be entitled to any **PIP medical** benefits. |
| Benefits | You will pay a reduced premium because your policy will not be charged a premium for **PIP medical** coverage. |

By making the selection, Springer certified that she had "coverage under both Medicare Parts A and B; AND . . . all **resident relatives** have **qualified health coverage** or are covered under another auto policy with **PIP medical** coverage:"



__X__ Option 6: No **PIP medical** coverage.

By selecting Option 6, you certify that <u>both</u> of the following are true:
• The **applicant** or **named insured** has coverage under both Medicare Parts A and B; AND
• **Any** spouse and all **resident relatives** have **qualified health coverage** or are covered under another auto policy with **PIP medical** coverage.

Option 6 provides a 100% reduction in Allowable Expenses (Medical) premium.

Under options 5 and 6, if the household composition changes, this selection will continue until the next policy renewal, and all additional household members will be deemed to be qualified under the option selected.

Consistent with MCL 500.3107d(7)(b), the PIP medical coverage selection form included the following definition:

**Qualified health coverage** means either of the following:

• Health and accident coverage that does not exclude or limit coverage for injuries related to auto accidents and has an annual individual deductible of $6,000 (subject to annual adjustments by the Director) or less: OR

• Coverage under both Medicare Parts A and B.

Medicaid and health care sharing ministries are examples of coverages that are not considered **qualified health coverage**.

Spinger had coverage under both Medicare parts A and B and provided proof of her coverage to Allstate. However, Springer did not identify Turner as a resident relative[4] or provide proof that he had qualified health coverage. It is undisputed that Turner's Medicaid insurance was not qualified health coverage under MCL 500.3107d(7)(b).

The policy declarations listed only Springer as the "named insured" and the "listed driver." Turner was not listed on the declarations as a covered individual or a resident excluded driver. The declarations further indicated that Springer declined PIP medical coverage, and she received "a 100% premium reduction compared to the premium for unlimited medical coverage."

Northland Radiology commenced this action seeking payment for reasonably necessary products, services and accommodations provided to Turner. Allstate moved for summary disposition under MCR 2.116(C)(8) and (10) arguing that there was no PIP medical coverage available to Turner under Springer's policy. Allstate maintained that Turner's resident-relative status was "somewhat disputed," but asserted that it was irrelevant because Springer had opted out of PIP medical coverage under MCL 500.3107d for herself, her spouse, and any resident relative in exchange for "a 100% premium reduction compared to the premium for unlimited medical coverage." In response, Northland Radiology argued that the election to opt out of coverage applied only to Springer because Turner did not have qualified health coverage as required by MCL 50031017d(1). Northland Radiology asserted that Springer made an ineffective election to exclude Turner and thus MCL 500.3107d(4) required Allstate to provide unlimited PIP medical coverage to Turner.

The trial court granted summary disposition to Allstate. The trial court noted that Northland Radiology admitted that Allstate "was unaware of Mr. Turner's existence, let alone that he did not have qualifying health insurance as required by MCL §500.3107d." The trial court rejected Northland Radiology's argument that the opt out was ineffective, concluding that Allstate was entitled to rely on Springer's statements on the opt out form when Allstate wrote its policy and provided Springer a reduction in her premium. Northland Radiology moved for reconsideration arguing that equitable principles dictated that the trial court conclude that the opt out was ineffective as applied to Turner. The trial court denied Northland Radiology's motion, and this appeal followed.

## II. STANDARDS OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "Where a motion for summary disposition is brought under both MCR 2.116(C)(8) and (C)(10), but the parties and the trial court relied on matters outside the pleadings, as is the case here, MCR 2.116(C)(10) is the appropriate basis for review." *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457;

---

[4] There is no evidence in the record whether Turner resided with Springer at the time that she executed the opt-out form.

750 NW2d 615 (2008). Summary disposition under MCR 2.116(C)(10) is warranted when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (cleaned up). When reviewing a motion for summary disposition under MCR 2.116(C)(10), a court must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*. Summary disposition should be granted when, after reviewing the evidence in the light most favorable to the nonmoving party, there are no remaining issues of material fact and the moving party is entitled to judgment as a matter of law. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016).

Questions of statutory interpretation are also reviewed de novo. *Milne v Robinson*, 513 Mich 1, 7; 6 NW3d 40 (2024). "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). "We accord to every word or phrase of a statute its plain and ordinary meaning, unless a term has a special, technical meaning or is defined in the statute." *Guardian Environmental Servs, Inc v Bureau of Constr Codes & Fire Safety*, 279 Mich App 1, 6; 755 NW2d 556 (2008). "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written." *Honigman Miller Schwartz & Cohn LLP v City of Detroit,* 505 Mich 284, 294; 952 NW2d 358 (2020) (cleaned up).

III. ANALYSIS

Northland Radiology argues that Springer did not effectively elect to opt out of PIP medical coverage and thus the trial court erred by granting summary disposition to Allstate. We agree.

"The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Donner v Progressive Mich Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365477); slip op at 4 (cleaned up). "This includes PIP benefits. A person injured in an accident arising from the ownership, operation, or maintenance of a motor vehicle as a motor vehicle is immediately entitled to PIP benefits without the need to prove fault." *Id*. at ___; slip op at 4 (cleaned up). "PIP benefits are mandated by statute under the no-fault act, and, therefore, the statute is the rule book for deciding issues of awarding benefits." *Univ Neurosurgical Assoc, PC v Auto Club Ins Ass'n*, 348 Mich App 305, 311; 18 NW3d 379 (2023) (cleaned up).

Although PIP benefits are mandated, "[t]he provisions of MCL 500.3107d unambiguously provide an 'option to opt out' if the insured is a qualified person with qualified healthcare coverage." *Id*. at 313. Specifically, MCL 500.3107d provides:

(1) For an insurance policy that provides the security required under section 3101(1) and is issued or renewed after July 1, 2020, the applicant or named insured may, in a way required under section 3107e and on a form approved by the director, elect to not maintain coverage for personal protection insurance benefits payable under section 3107(1)(a) if the applicant or named insured is a qualified person,

-5-

and if the applicant's or named insured's spouse and any relative of either that resides in the same household have qualified health coverage or have coverage for benefits payable under section 3107(1)(a) from an insurer that provides the security required by section 3101(1).

(2) An applicant or named insured shall, when requesting issuance or renewal of a policy under subsection (1), provide to the insurer a document from the person that provides the qualified health coverage stating the names of all persons covered under the qualified health coverage.

\* \* \*

(4) If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective election under subsection (1), the policy is considered to provide personal protection benefits under section 3107c(1)(d).

(5) An election under this section applies to the applicant or named insured, the applicant or named insured's spouse, a relative of either domiciled in the same household, and any other person who would have had a right to claim personal protection insurance benefits under the policy but for the election.

A "qualified person" is "a person who has qualified health coverage under subdivision (b)(ii)." MCL 500.3107d(7)(c). "Qualified health coverage" is defined as either:

> (*i*) Other health or accident coverage to which both of the following apply:
>
> > (A) The coverage does not exclude or limit coverage for injuries related to motor vehicle accidents.
> >
> > (B) Any annual deductible for the coverage is $6,000.00 or less per individual. The director shall adjust the amount in the sub-subparagraph on July 1 of each year by the percentage change in the medical component of the Consumer Price Index for the preceding calendar year. However, the director shall not make the adjustment unless the adjustment, or the total of the adjustment and previous unadded adjustments, is $500.00 or more.
>
> (*ii*) Coverage under parts A and B of the federal Medicare program established under subchapter XVIII of the social security act, 42 USC 1395 to 1395*lll*.

"Reading the above statutory provisions together, it is evident that under MCL 500.3107d(1), the named insured may decline PIP coverage for allowable expenses if the named insured is 'a qualified person,' meaning the named insured has health coverage under parts A and B of Medicare, *and* if household relatives also have the described required other coverage." *Love v Rudolph*, __ Mich App __, __; __ NW3d __ (2025) (Docket No. 369895); slip op at __ (citations omitted).

Northland Radiology argues that Springer's election to opt out of PIP medical coverage was ineffective for several reasons. First, Northland Radiology asserts that Turner was not "a qualified person" under MCL 500.3107d. While Springer—the named insured—was required to be a qualified person, there is not a similar requirement for a resident relative. Turner—a resident relative—was only required to have the described required other coverage. MCL 500.3107d(1).

Northland Radiology also argues that MCL 500.3107d(3)(g) required Allstate to present Turner with an approved form to opt out of PIP medical coverage because he was a "qualified person." MCL 500.3107d(3)(g) provides that, "[i]f all persons required to be qualified persons under [MCL 500.3107d(1)] are qualified persons, [the insurance provider's form must] provide the person a way to mark the form to elect to not maintain the coverage." As discussed, only the named insured or applicant is required to be a qualified person. Springer was a qualified person, and Allstate's form had to provide Springer with a way to opt out of PIP medical coverage, which it did. Under MCL 500.3107d(5), Springer's election to opt out of PIP medical coverage applied to herself *and* to Turner as her resident relative.

Northland Radiology additionally argues that Springer did not make an effective election to opt out of PIP medical coverage because *all* the conditions to opt out were not met. As discussed, the requirements to opt out of PIP medical coverage under MCL 500.3107d are: (1) the automobile insurance policy must have been issued or renewed after July 1, 2020; (2) the applicant or named insured must be a "qualified person," meaning they have health coverage under parts A and B of Medicare; (3) the applicant's or named insured's spouse and resident relatives must have "qualified health coverage" or be covered under another auto policy with PIP medical coverage; (4) the applicant or named insured must elect to not maintain PIP medical coverage, and that election must be made on an approved form; and (5) the applicant or named insured must provide the insurer evidence of qualified health coverage for all persons.

Only some of the criteria outlined in MCL 500.3107d were met in this case: the subject policy was issued after July 1, 2020, Springer had health coverage under parts A and B of Medicare and thus was a qualified person, and Springer elected to opt out of her PIP medical coverage by endorsing a provision on Allstate's form. But Turner did not have the described required other coverage, and Springer only provided Allstate with documentation of her own qualified health coverage; she did not provide documentation of qualified health coverage for Turner.

It is well established that "courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory." *Johnson v Recca*, 492 Mich 169, 177; 821 NW2d 520 (2012) (cleaned up). If an applicant or named insured could elect to opt out of PIP medical coverage without meeting all the criteria outlined in MCL 500.3107d, it would render those criteria meaningless. Because all the criteria were not met in this case, we conclude that Springer failed to make an effective election to opt out of PIP medical coverage under MCL 500.3107d.

We further conclude that an ineffective opt-out is applicable to the applicant or named insured, their spouse, resident relatives, and any other person who may have a right to claim PIP benefits under the policy. MCL 500.3107d(5) plainly states that an election to opt out of PIP medical coverage is applicable "to the applicant or named insured, the applicant or named insured's spouse, a relative of either domiciled in the same household, and any other person who

would have had a right to claim personal protection insurance benefits under the policy but for the election." It may be reasonably inferred from this language that the Legislature likewise intended that an applicant's or named insured's failure to make an effective election is applicable to all the same persons.

If an applicant or named insured fails to make an effective election, as in this case, MCL 500.3107d(4) plainly states that the policy is considered to provide unlimited PIP medical coverage:

> If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective election under subsection (1), the *policy* is considered to provide personal protection benefits under section 3107c(1)(d).[5] [Emphasis added.]

It is evident from this plain and unambiguous statutory language that the Legislature intended the unlimited PIP medical coverage to apply to the whole policy and not select individuals. If the Legislature intended to limit the application of unlimited PIP medical coverage, it could have used language reflecting that intent.

Likewise, the Legislature could have specified if it intended that a policy would not provide any PIP medical coverage if the applicant or named insured did not make an effective election to opt out of PIP coverage. For example, MCL 500.3107c authorizes an applicant or named insured to select PIP medical coverage limits of $50,000, $250,000, $500,000, or unlimited. Notably, if an effective selection of coverage has not been made, the statute provides:

> (3) If an insurance policy is issued or renewed as described in subsection (1) and the applicant or named insured has not made an effective selection under subsection (1) but a premium or premium installment has been paid, there is a rebuttable presumption that the amount of the premium or installment paid accurately reflects the level of coverage applicable to the policy under subsection (1).

> (4) If an insurance policy is issued or renewed as described in subsection (1), the applicant or named insured has not made an effective selection under subsection (1), and a presumption under subsection (3) does not apply, subsection (1)(d)[6] applies to the policy.

The Legislature could have included similar language in MCL 500.3107d, but it did not. "Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Farrington v Total Petroleum, Inc,* 442 Mich 201, 210; 501 NW2d 76 (1993). The language chosen by the Legislature in MCL 500.3107d reflects its intent that a policy will provide unlimited

---

[5] MCL 500.3107c(1)(d) states that the coverage level is "[n]o limit for personal protection insurance benefits under section 3107(1)(a)."

[6] MCL 500.3107c(1)(d) provides no limit for PIP medical coverage.

PIP medical coverage if an applicant or named insured does not make an effective election to opt out of coverage.

Accordingly, we conclude that the trial court erred by granting summary disposition to Allstate, and, absent any other valid defenses, Allstate's policy should be considered to provide unlimited PIP medical coverage under MCL 500.3107c(1)(d). We express no opinion regarding whether Allstate would be permitted to raise a defense of fraud and request rescission on remand.[7]

Reversed and remanded to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Philip P. Mariani

---

[7] Given our reversal of the trial court's grant of summary disposition and remand for further proceedings, it is not necessary for us to address Northland Radiology's argument regarding equitable relief.